PHILIP GRUNER LUMBER CO. v. ALGONQUIN LUMBER CO. ET AL.

[85 South. 191, In Banc. No 21187.]

1. SALES. *Conduct of parties may waive provision making time of the essence.*

Where a lumber company bought lumber to be delivered within a given number of days and on certain stipulations, and where by mutual agreement or by conduct amounting to a waiver such as extension of time and a partial performance, the court will consider the time as having been waived, even if it could be

held sufficient to constitute a contract making time the essence of the contract.

2. PRINCIPAL AND AGENT. *Power of agent to bind principal; notice to persons dealing with the agent.*

Where a principal employs an agent with limited power, the agent cannot bind his principal by an agreement beyond the scope of his authority; and persons dealing with the agent must know the agent's powers, and cannot, in the absence of elements of estoppel, hold the principal on such agreement.

APPEAL from chancery court of Lauderdale county.
Hon. G. C. TANN, Chancellor.

Suit by the Philip Gruner Lumber Company against the Algonquin Lumber Company and others, with cross-bill by defendant named. Judgment for defendant, dismissing the bill and awarding judgment on cross-bill, and complainant appeals. Reversed and remanded.

*C. D. Christman,* for appellant.

The Algonquin Lumber Company was not released from its obligation to fill the two contracts by anything said by Mr. Roy, for the following reasons: 1. Roy was not a general agent of the Gruner Lumber Company and this was well known to the Algonquin Lumber Company, because they had had the contracts confirmed from the St. Louis office and one of them modified. They had conducted all of the correspondence with the St. Louis office, and had taken up the question of advancement with the St. Louis office.

2. The language used by the said Roy, if admitted to have been used by a party who could bind the complainant, does not amount to a release of the defendant, Algonquin Lumber Company, from liability to ship under said contracts.

3. The Algonquin Lumber Company did not rely upon what had been said to them by Roy, but immediately took the matter up with the Gruner & Brothers head

office at St. Louis, by their letter of January 3, 1918, to Phillip Gruner & Brothers Lumber Co.

It is the contention of the complainant in this case that the parties to the two contracts construed the clauses in said contract relating to the time of shipment to mean that if the shipments were not complete within thirty days on the October 17th contract; and ninety days on the November 21st contract; and if shipment was prevented by reason of embargoes, car shortage or other conditions beyond their control, that defendant would ship as soon as the conditions preventing shipment were removed.

In 6 R. C. L., page 853, it is said: It is presumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to protect his own interest and to insist upon his own rights, and that whatever is done by the parties during the period of performance of the contract, is done under its terms as they understood them and intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious, and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them sees a construction at variance with the practical construction they have placed upon it of what was intended by its premises. Citing *Robbins* v. *Kimball*, 29 A. S. R. 45; *Mittau* v. *Roddan*, 6 L. R. A. (N. S.) 275; *Mueller* v. *Northwestern University*, 88 A. S. R. 194; *Vincennes* v. *Citizens Gas Light Co.*, 16 L. R. A. 485, and a number of other cases.

To quote further from the text of the R. C. L. cited; It has been said that in order to render applicable the rule that contemporary construction of a contract by acts of the parties is entitled to great weight; it should appear with reasonable certainty that they were

acts of both parties, done with knowledge and in view of a purpose at least consistent with that to which they are sought to be applied. In such a case, the practical interpretation by the parties themselves is entitled to great, if not controlling influence, in ascertaining their understanding of its terms." Citing *Wyatt* v. *Larimer, etc., Irrigation Co.,* 36 Al. S. R. 280 and a number of other cases. The supreme court of the state of Mississippi, in *Spengler* v. *Stiles-Tull Lumber Co.,* 48 So. 966, lays down the rule that the contemporaneous construction placed on an instrument by the parties thereto is entitled to much weight in reaching the intent and purpose of the instrument.

As to the printed line in the letter heads upon which these contracts were drawn to the effect: "All quotations, contracts and agreements are made contingent upon accidents, strikes and other delays unavoidable or beyond our control, quotations are made subject to immediate acceptance and prior to sale." This was a line printed on the stationery of the Algonquin Lumber Co. and appeared near the top of said stationery. In the case of *Fish* v. *Hamilton,* 50 C. C. A. p. 509, a similar provision was held to apply only to the time of delivery and not to relief from delivery altogether. That a seller with such a provision in a contract was bound to deliver within a reasonable time after the termination of a strike, where a strike was in effect during the time the goods were contracted to be delivered.

So I think it is a fair construction to place upon the conduct of the parties to these contracts, that they, themselves construed the contracts to mean, that if on account of embargoes or car shortages the lumber could not be shipped within the number of days specified, that the lumber would be shipped within a reasonable time after the embargo was lifted or the the car shortage had disappeared.

In conclusion I wish to say that there are two propositions of law that control this case, either one of which should convince this court that the chancellor erred in not entering a decree in favor of the complainant, and both of which are too simple to need the citation of authority other than has already been cited. Bear in mind that time was not of the essence of these contracts. The lumber was not bought for any particular purpose or to be used at any certain time. The first proposition is, that if the time limit of the two contracts were that the lumber should be shipped within thirty and ninety days, and if not so shipped, the contracts were cancelled, then said stipulation was waived by the parties to said contracts by recognizing them to be in force after the said time limit had expired and continuing to ship lumber under them. There is no doubt but that they did this.

The second proposition is that the parties themselves construed the provisions in the contract in accordance with the contention of complainant, as shown by their actions and correspondence. For the foregoing reasons I ask that the case be reversed and judgment entered in the supreme court for one thousand four hundred and forty-three dollars together with six per cent interest on said amount from December 30, 1918.

*Neville & Stone* and *J. H. Currie,* for appellee.

As we conceive it, there are several propositions of law involved herein which we desire to bring, briefly, to the attention of the court, which are as follows: First: What is the effect of the limitations in the contracts here sued on, and how are those limitations to be construed with reference to the subject-matter and the time named for the completion of the contracts? Second: Is the time named in the contracts for the completion of them, of the essence of the contracts? Third: The facts

123 Miss.—11

as to the agency of J. G. Roy, and the effect of his agreement with the Algonquin Company one of the appellees herein.

We shall discuss these propositions of law very briefly, in the order named. The limitation in these contracts; that is, that the contracts were made contingent upon strikes, accidents, or other delays unavoidable and beyond the control of the appellees, was, in our opinion, binding upon the appellant herein. We do not think that these limitations would give way as contended for by counsel, for the appellant, to the printed matter in the contracts. We respectfully submit to the court that this court has held, in the case of *Hardy Tynes Foundry Machine Co.* v. *Glen Allen, Oil Mills,* 36 So. 262, that stipulations of this nature should be construed, with reference to the other parts of the contract, so as to reconcile them thereto.

Under that rule we think, under the facts of this case, if it were impossible for the appellees to have obtained cars in which to make shipment of the lumber to appellant within the time named in the contracts, that appellees are relieved from liability to the appellant for any lumber not shipped by appellees to appellant.

It is undisputed that the cars could not be obtained within the time named for the completion of the contracts. The courts have repeatedly held that a limitation such as this does not suspend but relieves from all liability altogether. We respectfully refer the court to the case of the *Hull Coal & Coke Co.,* 51 C. C. A. 213; *Jessup Paper Co.* v. *Piper,* 133 Federal, 108, 35 Cyc. 246 and *Raising Fertilizer Co.* v. *Barrow,* 12 So. 388.

If the parties themselves made the contracts, and agreed upon the time limit for the performance of the contracts, the contracts being made for a commodity that was constantly changing in prices, we do not see how it can be contended that time was not the essence of these contracts. This question is discussed at

length in the case of the *Hull Coal & Coke Co.* v. *The Empire Milling Co.*, 51 C. C. A. 217.

It seems to us, under the facts in this case, that the said J. G. Roy was clearly the general agent of the appellant, and that as such he made a valid agreement with the Algonquin Lumber Company as testified to by Mr. Ward, which testimony is found on page 46 of the record.

With reference to the question of Roy's agency, we respectfully refer the court to the case of *Potter* v. *Springfield Milling Co.*, 75 Miss. 532. The facts in this case are much stronger than in the case just cited, as to agency, in which said case the court held that the salesman of the Springfield Milling Company was the General Agent of that company.

If the said Roy was the agent of the appellant, and made the agreement testified to by Mr. Ward, certainly the appellee was released from doing anything except trying, in good faith, to ship this lumber prior to the date of the expiration of the time limit named in the contracts, and thereafter to ship to appellant such of said lumber as had not been shipped to the Government when cars could be obtained therefor.

Even if Roy was not the General Agent of appellant we think the notice received by him at the time of the conversation and agreement with Ward was imputed to appellant, and that appellant would be bound thereby, it having received from appellees several cars of lumber after the date of the expiration of the contracts, because the appellees having carried out their agreement with the said Roy, there can be no question that appellant never received this notice because said notice was clearly given it in the letter of date January 11, 1918, from the Algonquin Lumber Company to appellant. 35 Cyc., 637.; *Alabama Chemical Co.* v. *Geiss*, 39 So. 255.

We fail to see how appellant can contend that no notice was given it by appellees, that this lumber would not be shipped, until the notice given it by appellees on December 30, 1918, by a letter of that date from appellees to appellant, particularly in view of the letter of date January 11, 1918, from appellees to appellant. We respectfully submit that under the facts in this case it was not the intention of appellees to refer at all to this lumber, in their letter of date Dec. 30, 1918, but that said letter was to put the appellant on notice that as far as appellees were concerned they were severing all business relations with appellant.

We believe the chancellor in his decree in the court below reached the proper decision in this case, and that said decree should be sustained by this court.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed suit in the chancery court against the appellees for the sum of one thousand five hundred thirty-two dollars and eighty-eight cents damages for failure to deliver lumber which the appellee, Algonquin Lumber Company, contracted to deiver to the appellant, and for discovery as to the assets of the Algonquin Lumber Company, which it is alleged was taken over by the other appellees, and for discovery of the amount of capital stock paid in, both in cash and in property. The damage claimed is alleged to be the difference in the contract price of lumber bought by the appellant and the market price of the lumber in the market, which the appellant had to buy to secure in lieu of the lumber purchased. The appellant sent its order of date October 15, 1917, to its purchasing agent at Meridian, Miss., for specific lumber marked for immediate shipment. On the 17th day of October the appellant, Algonquin Lumber Company, notified the appellant at St. Louis, Mo., of the acceptance of the order, the agent having

placed the order with the appellee,. which acceptance contains the following:

"We note that you specify on your order immediate shipment. Our understanding with Mr. Roy, and as stated on our acceptance, shipment was to be made, within reasonable—promised thirty days or shorter. Mr. Roy advises that this would be satisfactory. You understand that we have to cut these timbers. We also note that you show terms as two per cent. ten days after receipt of lumber. Our terms are eighty per cent. less two per cent. from day of shipping papers, or cash less two per cent. immediately upon arrival of car."

On October 19th appellant answered this letter as follows:

"We are in receipt of yours of 17th, which has reference to order 6532, and in reply beg to say that shipment thirty days or sooner will be entirely satisfactory. The terms as outlined in your letter will also be satisfactory."

On November 21st, the appellant sent another order to the Algonquin Lumber Company at Meridian, Miss., which, after. specifying the lumber desired, contained the following:

"The above price delivered St. Louis, Mo. Stock must be well manufactured, cut square edge, and sound; stock to be furnished from original growth timber, close grain. Shipment completed in ninety days or sooner, subject to embargoes on cars supplied."

On each of these orders given appellees through Roy, purchasing agent, and both of which were written on the stationery of Algonquin Lumber Company, was the following notation:

"All quotations, contracts, and agreements are made contingent upon accidents, strikes, and other delays unavoidable or beyond our control. These quotations are made subject to immediate acceptance on prior sale."

All of the lumber called for in these contracts was not shipped, and there is a great deal of correspondence in the record in reference to the matter between the parties. Some of the lumber was shipped at various times up to the summer of 1918. On January 3, 1918, the Algonquin Lumber Company wrote the appellant, stating their inability to get cars, and stating that they had discontinued cutting timbers on the orders, and that it looked like they would be unable to secure equipment for loading the same. Among other things in this letter they say:

"However, we may occasionally be able to put over a car, and in such case we will be only too glad to load the timbers we have cut on your orders."

On January 14th the appellant wrote the appellee, among other things:

"The order which we have placed with you we will expect you to ship at the earliest possible moment. We might say, however, for your information, that we have just received an order for a lot of stock going to the St. Louis Car Company, covered by government order 8772, and you may use this number in ordering to secure equipment, as the timbers which you have coming can be ripped into sizes such as they want. This will help you out, so you will have no further kick coming."

The Algonquin Lumber Company on January 17th acknowledged receipt of this letter, and said:

"We certainly appreciate your effort in this matter and thank you for giving us this government number. As you say, we have no further kick coming and will endeavor to get this stock moving to you rapidly."

On February 18, 1918, the Algonquin Lumber Company wrote the appellant that it would be impossible to get any cars in transit without the name of the government receiving officer:

"However, just at the present time we are unable to get any shipment through to St. Louis on account of the

embargo. Your orders will have to be held at present, but will be shipped as soon as possible to get them through.''

Some lumber was shipped in June, 1918, on this contract, but some trouble arose over demurrage charges, occasioned, it is claimed, by failure of the Algonquin Lumber Company to ship as directed, and a dispute arose between the parties as to who should pay these charges. Considerable correspondence took place; the Algonquin Lumber Company demanding the amount claimed that it was improperly charged with on account of demurrage, and the appellant demanding a shipment of the lumber under the contract.

Finally in December, 1918, the Algonquin Lumber Company wrote the appellant that it would not ship any further lumber under any consideration. There was a judgment for the defendants, dismissing complainant's bill, and awarding judgment on the cross-bill of the defendant for eighty-nine dollars and eighty-eight cents.

It is undisputed that the lumber called for was not shipped as agreed in the contract, but it is insisted by the appellee that it is not liable, because the provision above set out makes time the essence of the contract. It is contended by the appellee that it did all possible to procure cars, and was unable to do so because of the government having taken over the railroads and refusing cars for commercial purposes.

The appellee contends that the contract was made contingent upon strikes, accidents, or other unavoidable delays beyond the control of the appellees, and that, inasmuch as cars could not be procured, it is excused from performance, and that the time embraced in the contract for shipment is of the essence of the contract. The dealing between the parties shows that time was not regarded as the essence of the contract, and, if the language could be so construed on its face, it was waived by the

subsequent conduct and dealing of the parties with respect thereto. In *Gannaway* v. *Toler,* 84 So. 129, it was expressly stipulated as follows:

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract, and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties."

But the court held, under the facts in that case, that there was a waiver of this clause by delay in declaring the forfeiture. In the record before us there was no abandonment of the contract by the appellee, nor any effort to terminate because of the conditions until after the Armistice, and there was no effort to ship the timbers for some months prior thereto, and we think the defendants were not excused from performing their contract.

Another question presented in the record and in the argument is the power of the agent, Roy, to bind the appellant company by his agreement, upon which the appellee strongly relies. The testimony of the president of the appellant company, and that of the agent, shows that the agent's authority was limited to purchasing lumber subject to the approval of the company. There is no sufficient proof that he was a general agent, which would overturn this proof by the parties to the contract of agency between Roy and the appellant company. Indeed, the record shows that the order of October 15th was acknowledged by the Algonquin Lumber Company in a letter to the company, and its counter terms accepted by the president of the company, acting for the company in St. Louis. It is familiar learning that a person dealing with the agent of another must know the limitations of authority upon the power of the agent, and where he has no authority to make an agreement, in the absence of elements of estoppel, such agreements do not bind the

principal. From a careful consideration of the record, we think the chancellor erred in dismissing the complainant's bill. The judgment of the chancery court is therefore reversed, and the cause remanded.

*Reversed and remanded.*