## Sussman, Wormser & Co. *v.* Sea Food Co.

[90 South. 116. No. 22145.]

1. Novation. *An agreement postponing performance of a sale contract does not discharge the latter.*

   In order for a contract for the sale of goods to be discharged by a new contract by implication, the intention to so discharge must clearly appear from the inconsistency of the terms of the new and the old contract; a mere postponement of performance by the subsequent agreement does not discharge the old contract, but becomes a part of it.

2. Novation. *Agreement changing contract time of delivery held not to discharge original contract.*

   Where a certain date is fixed as the time limit for delivery of a carload of oysters by the seller to the purchaser, and by subsequent agreement between the parties in the form of correspondence the time limit date for delivery is postponed, such agreement does not discharge the original contract, but same remains in full force, changed only to the extent that delivery is postponed.

3. Sales. *Purchaser's delay in sending specifications held condoned so as not to constitute breach, but merely a modification of contract.*

   Where a certain date is fixed in a contract for the sale of a carload of oysters, as the limit of time within which the purchaser is required to forward to the seller specifications for shipment, and such specifications are sent at a later date, and the seller acknowledges receipt of same and agrees to ship the oysters, such failure on the part of the purchaser is condoned, and does not constitute a breach of the contract by the purchaser, but is a mere modification of the contract to that extent.

4. Sales. *Modifications of original contract held not to require new consideration.*

   Such modifications of the original contract are not invalid because not supported by a new consideration, the consideration for the original contract being sufficient for that purpose; and in addition the mutual promises and undertakings of the parties constituting such modifications are sufficient consideration for each other.

5. Sales. *Measure of damages for failure to deliver is the difference between the contract price and the market value at postponed date.*

The measure of damages, where the delivery date within which delivery must be made has been postponed by the parties, is the difference be-between the contract price of the goods and their market value at such postponed date of delivery.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Suit by Sussman, Wormser & Co. against the Sea Food Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Appellants, a wholesale grocery concern in San Francisco, sued the appellee, a Mississippi corporation engaged in gathering, canning, and selling oysters and other sea food, in the circuit court of Harrison county, for four thousand dollars, claimed to have been lost by appellants on account of an alleged breach by the appellee of a contract between the parties for the sale by the appellee to the appellants of a carload of oysters; the alleged breach consisting in the failure of appellee to deliver the oysters. At the conclusion of the testimony the trial court directed a verdict for appellee, and a judgment accordingly was entered, from which the appellants prosecute this appeal.

In considering the propriety of the peremptory instruction given for appellee, the evidence should be treated as proving every fact which it tends to prove favorable to appellants. So considering the testimony, the substantial facts of the case are as follows:

On November 20, 1916, the appellants purchased from the appellee through one Taylor, a merchandise broker doing business in San Francisco, a carload of oysters to be delivered in January and February, 1917. The contract of purchase is in writing, and was signed by the parties. There are certain stipulations embodied in the contract under the head of "Conditions." Those pertinent to the questions involved in this case are contained in paragraphs 1, 6, and 7. These stipulations provide in substance that the appellee shall be excused from complying with its contract if it should be unable to gather and pack the

oysters necessary to fill it, and in paragraph 6, among other things, it is provided that appellee "incurs no liability hereunder if not procured, or not enough procured to fill all orders;" and in paragraph 7 it is provided that— "Specifications are to be furnished by buyer on or before the 1st day of January, 1917, following the date of contract, otherwise the fulfillment of this contract is at seller's option."

And in section 6 there is a clause providing that appellee shall not be liable "for failure to deliver or from delay in delivery, where such failure or delay shall be caused or occasioned by any accident" beyond the control of appellee.

The oysters purchased nor any part of them were delivered in January and February, 1917. There was much correspondence between the appellants and appellee, and also between each of them and Taylor, the broker in San Francisco who negotiated the sale of the oysters for the appellee, in reference to the delivery of the oysters, and especially touching the postponement of the delivery by appellee. This correspondence shows that appellee claimed that it could not procure and pack the oysters in time for delivery in January and February, 1917. By the correspondence referred to, which was offered in evidence by appellants, the time of delivery was postponed from time to time, until finally it was fixed by both parties at a date not later than March 1, 1919. In a letter of June 8, 1918, from appellants to appellee, and reply thereto by appellee under date of June 14, 1918, it was distinctly agreed between the parties that delivery should be made on or before March 1, 1919. This was not done and appellants sued appellee for the difference between the contract price of the oysters and their market price at the time and place of delivery. This correspondence tends to show that, if appellants failed to comply with paragraph 7 of the "conditions" in the contract which required them to forward specifications to appellee on or before January 1, 1917, appellee claimed no advantage on account thereof, but, on the con-

trary, condoned it by acknowledging receipt of the specifications at a later date and agreeing to ship the oysters.

The appellants offered testimony, most of which was ruled out of court, tending to show that appellee had no excuse for not shipping the oysters, that it had the oysters on hand and packed, and could have shipped them; that at about the same time this carload was purchased by appellants the appellee, through the said Taylor, the broker in San Francisco, sold to various parties in that city oysters of the same character and quality which were delivered.

*Rushing & Guice,* for appellant.

That part of appellee's notice under the plea of general issue, to which we refer to, and about which the court below agreed with appellee, reads as follows: "That there was no meeting of minds for a novation of the old contract or any new contract was entered into and no consideration from plaintiff to defendant passing or moving. All of the court's erroneous rulings were made with the idea that this statement correctly announced the law. We respectfully submit that this is not the law applicable to the facts of the instant case.

In 2 Mechem on Sales (an authority that this honorable court has quoted heretofore as a high authority) section 807 it is said: "But in order that the old contract shall be held discharged by implication 'the intention to discharge the original contract must clearly appear from the inconsistency of the new terms, with the old a mere postponement of performance, for the convenience of one of the parties, does not discharge the contract.'

"This question has often arisen in contracts for the sale and delivery of goods where the delivery is to extend over some time, the purchaser requests a postponement of delivery, then refuses to accept the goods, at all, and then alleges that the contract was discharged by the alteration of the time of performance that a new contract was there-

by created and that the new contract is void for noncompliance with the statute of frauds.

"But the courts have always recognized the distinction between a substitution of one agreement for another and a voluntary forbearance to deliver at the request of another and will not regard the latter as affecting the rights of the parties further than this, that if a man asks to have performance of his contract postponed he does so at his own risk."

And again: "Akin also to the subject discussed in preceding sections is that which arises where, at the request of one of the parties and before the time for performance has expired, the time or place of delivery has been changed, such changes may be so great or made under such circumstances as to amount to an abandonment of the old contract and the making of a new one; in which case the new contract must be so made as to satisfy the requirements of the statute of frauds in all cases to which that statute is applicable. Such alterations, however, do not usually result in the making of a new contract, but are rather to be construed as a forbearance or waiver, by the one party at the request of the other, of a strict performance of the contract according to its terms, but leaving the contract otherwise unimpaired and entitling either party at any time within the original period to insist upon its performance; while, on the other hand, a performance at the new time or place assented to is a performance of the original contract.

"It is indispensable, however, that the party seeking to enforce the contract upon a request for performance made after the expiration of the period originally fixed shall be the forbearing one, for otherwise he cannot show that he was ready and willing to perform at the time or place originally agreed upon; and he would be compelled to rely upon the consent of the other to a substituted performance, which consent would not be binding without consideration and the elements of a new contract."

In the note to section 1151, Mechem on Sales, it is said: "In *Bacon* v. *Cobb,* 45 Ill. 27, where the defendants were sued for not delivering corn as they had agreed, it appeared that the plaintiffs, at the defendant's request, had several times extended the time and had changed the place of delivery. Still the corn was not delivered and in the action to recover damages it was urged by the sellers that these changes amounted to a new contract and that the plaintiffs could not recover on the original one on which they had declared. But the court held that recovery could be had, saying: 'Numerous authorities might be cited to the point that where a party agrees to accept the thing to be delivered at a time or place other than that stipulated, a performance of this by the other party is equivalent to a performance of the original undertaking . . . It would be strange law, indeed, if the defendants were allowed to say that, inasmuch as you gave us further time in which to perform our contracts, and we did not comply, you have no right to an action against us on our original contract.'" Citing *McCombs* v. *McKenna,* 21 Watts & S. (Pa.) 216, 37 Am. Dec. 404; *Cummings* v. *Arnold,* 3 Metc. (Mass.) 486, 37 Am. Dec. 155; *Robinson* v. *Batchelder,* 4 N. H. 40; *Richardson* v. *Cooper,* 25 Me. 450; *Cuff* v. *Pennl,* 1 Maule & Sel. 21; *Watkins* v. *Hodges,* 6 H. & J. (Md.) 38; *Ogle* v. *Vane* (1867), L. R. 2 Q. B. 275.

One consideration will support all the provisions of a contract if such was the intention of the parties. Therefore if the agreement is but the completion of a former contract it has the original consideration for its support, as when the contract calls for the giving of bond for its faithful performance, such bond is not without consideration merely because it was executed after the contract. The letting of the contract is sufficient consideration for the bond, or should one party at the instance of the other consent to a change or modification in the terms of their mutual obligations, the modification so made is a valuable consideration, and will support a promise given by the party at whose request the change was made. 1 Elliott on

Contracts, section 243, page 428; *Roberts* v. *Benjamin*, 124 U. S. 64; Benj. Sales, Par. 872; 2 Sedg. Dam. (7 Ed. ( 134,. note b; *Ogle* v. *Earl Vane*, L. R. 2 Q. B. 275, and in the Exchequer Chamber L. R. 3 Q. B. 272; *Hickman* v. *Haynes*, L. R. 10 C. P. 598; *Hill* v. *Smith*, 34 Vt. 535, 547; *Newton* v. *Wales*, 3 Rob. (N. Y.) 453; *Summers* v. *Hibbard, Spencer, Bartlett & Co.*, 38 N. E. 899; *Crescent City Mfg. Co., Ltd.*, v. *Slattery*, 61 So. 870; 24 R. C. L., Sec. 337, page 73; Citing *Roberts* v. *Benjamin*, 124 U. S. 64, and authorities; *W. F. Covington Mfg. Co.* v. *Ferguson*, 85 So. 726 (decided April 15, 1920); *Lowy* v. *Rosengrant*, 196 Ala. 337, 71 So. 439; *Craig* v. *Pierson L. Co.*, 179 Ala. 535, 60 So. 838, 35 Cyc. 637; and at the place of delivery, *Bell* v. *Reynolds*, 78 Ala. 511, 56 Am. Rep. 52; *Creig* v. *Pierson, supra; Crandall-Pettee Co.* v. *Jebeles & Colias*, 195 Ala. 152, 157, 69 So. 964; *Cent. of Ga. Ry. Co.* v. *Isbell*, 198 Ala. 469, 473, 73 So. 648; *Curjel & Co.* v. *Hallett Mfg. Co.*, 198 Ala. 609, 73 So. 938.

The measure of damages for non-delivery is based on the difference between the agreed price and the market price at the time and place of delivery with interest. *Vann* v. *Lunsford*, 91 Ala. 576, 8 So. 719; *Clements* v. *Beatty*, 87 Ala. 238, 6 So. 151, and foregoing later authorities. This does not appear to be a question of first impression in this state as your honors held in the case of *Philip Gruner Lumber Co.* v. *Algonquin Lumber Co.*, 85 So. 191 (decided July 12, 1920) that the conduct of the parties may waive provisions in a contract where time was the essence of the contract. *Gannaway* v. *Toler*, 84 So. 129. In conclusion we submit that appellant made proof of every allegation in its declaration. There is proof of the contract, of the fact that appellee operated its plant without interruption from strikes, fires, etc., that orders taken subsequent to this order were filled, that at the request of appellees the date of delivery was postponed, and of the damages sustained by the appellant on the date of the breach of the contract.

The testimony as a whole shows that appellants made no effort to deliver nor were they willing to give notice

that they would not deliver. In the case of *Phillip Gruner Lbr. Co.* v. *Algonquin*, 85 So. 191, this honorable court decided that the parties might waive provisions in contract even when time was the essence of the contract.

We submit that the evidence would have warranted the court in granting a peremptory instruction for the plaintiff below, that under the law no other result is possible. We adopt the language of the court in the case of *Bacon* v. *Cobb*, 45 Ill. 27.

It would be strange law, indeed, if the defendant were allowed to say that "inasmuch as you gave us further time in which to perform our contract and we did not comply, you have no right to an action against us on our original contract."

We therefore submit the cause with a feeling of confidence that this court will reverse the case and enter judgment on the undisputed damages proven.

*White & Ford* and *J. L. Taylor*, for appellee.

It is contended by appellant that the contract was continued but in none of the correspondence does it appear at any place that the appellee ever requested a postponement of the time to ship the oysters.

It is manifest that if the appellee had packed sufficient oysters and had shipped the car of oysters in March 1917, that appellant could have refused to accept the oysters because they were not shipped in January or February and this appellant would certainly have done, if the price of oysters had declined. Appellant rightfully could have refused to have accepted a shipment later than the last day of February 1917, on the ground it was not bound by the contract and so if appellant was not bound after February 28th, by the contract it necessarily follows that appellee was under no obligations to ship oysters after February 28th, so this case necessarily stands upon the point as to whether the oysters were packed by appellee and could have been shipped in January or February 1917 according

to the contract and it is undisputed that the oysters were not packed and that appellee could not ship the oysters in 1916 or 17 because the same were not packed. It will be noted in condition 6 on page 7 as follows: "Vendor incurs no liability hereunder if not procured or not enough procured to fill all orders." This, of course referred to the catching and canning of oysters, and again the testimony shows that appellee filled the orders in the turn that they were received and that because the goods were not packed sufficient to fill the order within the time, they were not shipped and thereby no liability was incurred by appellant.

Then, since the contract was not carried out within the time specified and because it could not be carried out because the oysters were not packed, then the appellee was under no legal liability in any way to appellant for the failure to ship the oysters and this contract thereupon ceased and was of no further force or effect and could not have been of any further force or effect unless the appellee had requested a postponement of the time of the delivery and nowhere do we find the appellee requested any such postponement but as a matter of fact because of the war conditions known to all, the price of oysters like all other products greatly enhanced in value and because of this the appellant of course would have been glad to have received the oysters at the exceedingly low price made and to have sold them at the very greatly increased price thereby making an enormous profit, but no novation of the old contract was made and no new contract was ever entered into whereby the appellee should ever sell the oysters to appellant at the prices stipulated in the original contract.

Counsel seeks to show that contracts dated after November 20 were filled but the testimony shows that they were filling the orders, and contracts and specifications which were received before. It will be noted on page 113 of record, that under date of December 16 a number of contracts were filled as listed therein, which though even bearing a later date than November 20, but were sent in and received prior to the Sussman Wormser Contract

which, as before stated, was sent in on December 28, as will appear from the letter on page 113 and on page 114 of the record as well as the letter of December 27 referred to hereinbefore, and shown on page 73 of the record.

Counsel on page 13 of his brief insists that a contract Dated January 4, 1917 with Dodge Sweney & Co., as shown on page 142 of the record was filled as testified to by E. G. Williams manager of Dodge Sweeney & Co., but it will be observed that on page 113, of the record that George I. Taylor sent this contract from Dodge Sweeney & Co., along with a number of other contracts all bearing the date of November 20, 1916, so that it is manifest that the date of January 4th is erroneous because the contract was sent from San Francisco on December 16, twelve days before the contract of Sussman Wormser & Co.

We beg to submit that the rule of damages in the state of Mississippi as announced in the 95th Mississippi, page 610, near the bottom of the page quoting from 94th Mississippi, page 351 is: "The measure of plaintiff's damages is the difference between the contract price and the market value of the article at the time and place of delivery." There is and was, no testimony as to the difference, if any there was, in the market value and the contract price of the oysters in question at that time and place of delivery.

We beg to submit that the case of *W. R. Marshall & Co. v. G. H. Dunbar N Son,* reported in the 81st South, at page 808, without a written opinion, is the case in point with this case, the difference being that there it was for shrimp, and here it is for oysters, and on a like contract and the court did not even write an opinion in the case but affirmed the case holding that the defendant was not liable.

We submit that there is no error and that the case should be affirmed.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above.)  Appellee's contention is that it was excused from delivery in January and

February, 1917, under paragraphs 1 and 6 of the "conditions" to the contract; and that the correspondence relied on as extending the time of delivery, and condoning the delay by appellants in forwarding specifications to appellee as provided in paragraph 7 of the "conditions," was a novation of the contract for which there was no consideration, and therefore not binding on appellee; and apparently the trial court took that view. In order for a contract for the sale of goods to be discharged by implication by a new contract, the intention to discharge must clearly appear from the inconsistency of the terms of the new and the old contract. A mere postponement of performance by the new agreement does not discharge the old contract. The substitution of one agreement for another, and the postponement of the time for delivery, whether on request of one of the parties or by voluntary agreement, are entirely separate and distinct. Such a modification of the contract as to delivery does not amount to its discharge. As said by the court in *Bacon* v. *Cobb,* 45 Ill. 47: "It would be strange law, indeed, if the defendants were allowed to say that, inasmuch as you gave us further time in which to perform our contracts, and we did not comply, you have no right to an action against us on our original contract." 2 Mechem on Sales, sections 807, 1151, and authorities cited and digested in the notes; and *Roberts* v. *Benjamin,* 124 U. S. 64, 8 Sup. Ct. 393, 31 L. Ed. 334. *Philip Gruner Lumber Co.* v. *Algonquin Lumber Co.,* 123 Miss. 157, 85 So. 191, is directly in point. There the time of delivery of the lumber involved had been extended by agreement of the parties; the seller being justified by the terms of the original contract in not making delivery at the time fixed therein. The court held that the old contract was not discharged by the subsequent agreement postponing the time of delivery. Applying these principles to the facts which appellants' testimony tended to establish, we find that the delivery of the carload of oysters was postponed from time to time by agreement of the parties, evidenced by a great mass of correspondence

had between the parties, and also between each of the parties and Taylor, the merchandise broker in San Francisco, through whom appellee made the original contract, most of which the trial court ruled out, and that finally it was distinctly agreed as shown by appellants' letter to appellee of June 8, 1918, and the latter's reply thereto of June 14, 1918, that delivery should be made not later than March 1, 1919, which was not made.

These principles apply with equal force to the stipulation in the contract contained in paragraph 7 of the "conditions" which provided that "specifications" should be furnished appellee by appellants not later than January 1, 1917, and in default thereof it should be optional with appellee as to whether it would carry out the contract. Appellant's testimony tended to show that this stipulation was complied with by it; but, if it was not, the correspondence between the parties clearly shows that the failure of appellants in that respect was condoned by the appellee. For illustration: In appellee's letter to appellants of June 22, 1917, it acknowledges the receipt from appellants of shipping instructions for the carload of oysters, and states, "To all of which we will conform," and in its numerous letters to appellants, offered in evidence, there is not an intimation that it had or intended to take advantage of any failure of appellants to comply with that stipulation.

It is contended on behalf of appellee that the agreement postponing delivery and waiving the time within which specifications were required to be furnished appellee by appellant amounted to a new contract which discharged the old contract, and, there being no consideration for the new contract, appellee was relieved from performance. As we have seen, the changes referred to did not make a new contract of the old. They were merely modifications of the written contract of November 20, 1916, agreed to by both parties. There was only one contract. The original consideration was sufficient under the law to support such modifications; and, if further consideration were needed,

the mutual promises of the parties constituting the modifications would furnish it.

It follows from this view of the law that the trial court erred in ruling out the correspondence between the parties, as well as that between the appellants and appellee on the one hand and Taylor, the latter's broker in San Francisco, on the other, which tended to show such modifications of the contract. Appellee contends that it was excused from delivery under paragraphs 1 and 6 of the "conditions" attached to the contract, because prior to March 1, 1917, the limit of time fixed for delivery in the contract as originally written, at no time did appellee have the required amount of oysters packed to fill appellee's contract, nor could they be procured in the ordinary course of its business, filling the contracts of its customers "in rotation," as it claimed it had a right to do; and appellee's testimony was addressed to justifying its failure to deliver within that time. The fault of that position is that the contract as modified by the correspondence called for delivery by the appellee at any time not later than the postponed date of delivery, March 1, 1919. If delivery is delayed by agreement of the parties, the postponed delivery date simply becomes part of the original contract. The appellants offered testimony to show that the appellee could have delivered the oysters under the contract. The larger part of this evidence was ruled out by the court, which was error.

The measure of damages in this case is the difference in the contract price of the oysters in question and their market price at the postponed date of delivery, March 1, 1919. If delivery is postponed by agreement of the parties, the market value at the time to which delivery is postponed is taken as the criterion. *Summers* v. *Hibbard*, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 872; *Crescent City Mfg. Co.* v. *Slattery*, 132 La. 917, 61 So. 870; 24 R. C. L. section 337, p. 73; *Covington Mfg. Co.* v. *Ferguson*, 204 Ala. 192, 85 So. 726.

*Reversed and remanded.*