Stoner & Co. *v.* Blocton Export Coal Co.*

(Division A. April 28, 1924. Suggestion of Error Overruled May 19, 1924.)

[100 So. 5. No. 24062.]

1. COMMERCE. *Statutes and regulations of Interstate Commerce Commission binding on both federal and state courts.*

Legislation by Congress under commerce clause of the Federal Constitution (article 1, section 8, clause 3), as well as administrative orders· for the regulation of interstate carriers adopted by the Interstate Commerce Commission in pursuance of such legislation, are controlling upon both federal and state courts.

2. SALES. *Seller prevented from shipping to purchaser because of subsequent car service orders excused from performance.*

Though it be not provided for in the contract, still, if a subsequent change is made in the law whereby performance of the contract becomes unlawful, its performance is excused. Under this principle, if the seller of coal is prevented from shipping to the purchaser because of a subsequent car service order of the Interstate Commerce Commission, the seller is excused from the performance of the contract even though the contract did not provide against such a contingency.

3. COMMERCE. *Preferential car service order of Interstate Commerce Commission, construed.*

The Interstate Commerce Commission passed a preferential car service order known as service order No. 23 as amended July 25, 1922, regulating the furnishing of cars by interstate common carriers for the loading and carrying of coal, which put such car service into five classes, each class constituting a paragraph in itself and being followed by "and subject thereto in the

order of priority." Class 2 contained clauses (a), (b), (c), and (d), and at the end of the paragraph constituting class 2 there was this language: "Note.—It is not intended by this paragraph to give any priority as between clauses (a), (b), (c) and (d) hereof." *Held*, that the language at the conclusion of each of said five classes, "and subject thereto in the order of priority," meant that each class stated in said car service order was to be given priority in the furnishing of cars over those classes following in numerical order, and that the note attached to class 2 was controlling as to the clauses in said class, and therefore there was no priority as between clauses therein (a), (b), (c) and (d).

4. SALES. *Measure of damages for failure to deliver stated; purchaser not required to buy elsewhere.*

A purchaser of coal, in order to recover for the loss suffered by him on account of the failure of the seller to ship such coal according to contract, is not required to go out into the market and supply himself with the coal which the seller had failed to ship according to contract, but had the right to treat the contract as breached by the seller, and the measure of the purchaser's damages is the difference between the contract price of the coal and the market price at the time and place of delivery.

*Headnote 1.  Commerce, 12 C. J., section 15;  2.  Sales, 35 Cyc, p. 247;  3.  Commerce, 12 C. J., section 192;  4.  Sales, 35 Cyc, pp. 633, 641.

APPEAL from chancery court of Leflore county.

HON. C. L. LOMAX, Chancellor.

Suit by Stoner & Co. against the Blocton Export Coal Company. From a decree for defendant, plaintiffs appeal. Reversed and remanded.

*Alfred Stoner,* for appellants.

I. It is the duty of the consignor to furnish the cars, unless the contrary intention appears. In this record nothing shows or tends to show a contrary intention. The contract in the case at bar, it will be observed, provided for the delivery of the coal f. o. b. cars at the mines. *Tallahatchie Lumber Company* v. *Cecil Lumber Company*

(Miss.) 87 So. 449; See, also *Hurst* v. *Altmont* (Ala.), 40 So. 1019.

II. Did the Embargo Placed by the Interstate Commerce Commission Affect the Contract?

The principal ground of defense is that cars could not be used by the defendant for the purpose of shipping coal to Stoner & Company, because of the orders of the Commerce Commission, placing an embargo and giving other classes priority of shipment. We submit, however, that the orders of the Commerce Commission show conclusively that the particular kind of coal contracted for by Stoner & Company was expressly placed in the preferred class and that no other purchaser of coal was given the right to insist on having his contracts filled prior to the class in which Stoner & Company's contract was placed by the Commerce Commission.

It is not disputed that Stoner & Company were retail dealers in coal for household use. The priority classes are set out in the order of the Commerce Commission as follows: (d) Bituminous coal which has passed over screens of four inches or larger openings, coke, and anthracite coal, to be shipped to retail dealers for household use. "Note: It is not intended by this paragraph to give any priority as between clauses a, b, c, and d hereof."

III. Granting for the Sake of Argument That Clauses A, B, and C, Were Given Priority Over Clause D, Could the Contract Have Been Performed by Virtue of Another Provision of the Order of the Interstate Commerce Commission?

At the beginning of this brief and argument it was pointed out that parties must perform their contracts, even though to do so becomes unexpectedly burdensome, the answer to any plea of burdensomeness being that they might have provided against it in their contract. The

order of the Commerce Commission did not affect all of the coal cars and left some of them to be used for any and all purposes.

Conceding for the sake of the argument that an embargo was placed on all cars, in so far as the contract under discussion is concerned, both parties contracted with reference to shortage of cars, and the appellee ran the risk of getting cars. The parties contracted with reference to strikes and shortage of cars. The defendant ran the risk of getting the cars. L. R. A. 1916F. pages 69 & 70 (notes); *Standard Scale & Supply Co.* v. *Baltimore; Enamel & Novelty Co.* (Md.) 110 Atl. 486, 9 A. L. R. 1502; *Krulewitch* v. *National Importing and Trading Co.,* 186 N. Y. Supp. 838.

It was never intended to deprive parties of their vested rights, by virtue of embargoes. It would be eminently unjust and would amount to a taking without due process of law. *L. & N. R. R. Co.* v. *Crowe,* 49 L. R. A. (N S.) 848; 14 A. L. R. 252.

IV. *Proof of Damage.*

It was intimated at the trial by appellee that the appellant would be compelled, in order to prove its damage, to show that appellant actually bought the same class of coal on the open market, as a substitute for what appellee failed to ship; that the measure of damages would be the difference between the contract price and the actual cost of the substitute coal to Stoner & Company in the open market. Such was not the law. All the authorities hold that it is necessary to show that appellant purchased coal on the open market. Hale on Damages, page 358, 24 R. C. L., title "Sales," section 335; *Summers* v. *Hibbard,* 46 A. S. R. —.

"Special damage may be pleaded, but if it is not, the measure of damages is the difference between the contract price and the market value at the time and place of delivery." *Eaver & Co.* v. *Harris,* 95 Miss. 607, 49

So. 258; *Craig & Company* v. *Preston Lumber Co.* (Ala.), 60 So. 838; *Sussman, Warmser & Co.* v. *Sea Food Co.* (Miss.), 95 So. 795; *Sussman, Warmser & Co.* v. *Sea Food Co.* (Miss.), 127 Miss. 420, 90 So. 116, (last paragraph); *McFadden* v. *Henderson* (Ala.), 29 So. 640; See, also, *Smith* v. *Wilson Mercantile Co.* (Ala.), 60 So. 484.

*Pollard & Hamner,* for appellee.

If the appellee is relieved by reason of the orders of the Interstate Commerce Commission, the decision of the chancellor is clearly correct and this case should be affirmed.    But does the order of the Interstate Commerce Commission release the appellee from filling its contract to deliver the coal?    Counsel for appellee cites the case of *Tallahatchie Lumber Company* v. *Cecil Lumber Co.,* 87 So. 449.    The case is not in point for the reason that the embargo in that case was placed by the steamship company to whom the lumber was to be delivered for shipment and the situation was similar to one that would prevail in the event of a strike by the employees of a given railroad system, ship company or other transportation carrier, and is wholly different from the class of cases where there is a change in the law or where a change might have been contemplated by the parties or where the law makes the fulfillment of a contract impossible.

The case of *Piaggio* v. *Somerville,* 119 Miss. 6, 80 So. 342, is referred to as authoritative in the Tallahatchie Lumber Company case and as being the basis on which the Tallahatchie Lumber Company case was decided, but the case of *Piaggo* v. *Somerville,* is not authoritative in the case at bar for the reason that the owners of the ship in question undertook to decide for themselves whether they should attempt to deliver the cargo because of the dangers of the sea due to unrestricted submarine warfare then being conducted by Germany, the contract not having protection against such a contingency.

In our judgment counsel for appellant wholly misconceives the meaning of the Interstate Commerce Commission order and seems to take the position that coal under division D of class 2 has the right equally with coal furnished under divisions A, B, and C of said Class 2, and his position is based on the note at the bottom of these classes stating "it is not intended by this paragraph to give any priorities between classes A, B. C, & D, hereof." But he wholly overlooks the statement at the beginning of Class 2, that the supply of cars shall be furnished "subject thereto in order of priority."

It appears to have been the purpose of the Interstate Commerce Commission that coal should be supplied to the different classes in the order that would give the greatest benefit and the most needed benefit to the greatest number and any other construction would be utterly foreign to the purpose for which the act was passed.

We come now to a consideration of the law on which our position in this case is based. The party is excused from a performance of the contract, "Where there is a subsequent change of the law whereby performance becomes unlawful." *Heart* v. *East Tenn. Brewing Company,* 130 A. S. R. 735. Other cases announcing this rule are found in the note in 120 A. S. R. pages 473, 474, following the case of *American Mercantile Exchange* v. *Blunt,* reported in 120 A. S. R., page 463, and also 10 L. R. A. (N. S.) page 414 and 10 Ann. Cas., page 1022, wherein it is held: "If an entire performance of it is unlawful, neither party is prejudiced but the contract is to be considered at an end."

"Performance is excused by a supervening impossibility caused by operation of a change in the law." 3 Elliott on Contracts, sec. 1901.

The rule applies whether the contract becomes unlawful or is made impossible of fulfillment. *Macon & Birmingham R. R. Co.* v. *Gibson,* 85 Ga. 1, 21 A. S. R. 135; *Irion et al.* v. *Hume, Assignee,* 50 Miss. 419; *Cordas* v. *Miller,* 33 Am. Rep. 430; *Crowley* v. *Northern Pac. Rail-*

*way,* 68 Wash. 558, 41 L. R. A. (N. S.) 559; *L. & N. R. R.*
v. *M. B. Crowe,* 156 Ky. 27; *Railroad Commission of Ga.*
v. *L. & N. R. R.,* 140 Ga. 817; *Tinney & Voyle Co.* v. *Los
Angeles Gas & Elec. Corporation,* 168 Calif. 12, Ann. Cas.
1915D, page 471; *Minneapolis, St. Paul & St. Marie Ry.
Co.* v. *Menasha Woodenware Company,* 150 Wis. 130,
L. R. A. 1915F, page 732; *Fitzgerald* v. *Grand Trunk Ry.
Co.,* 13 L. R. A. 70; *L. & N. R. R.* v. *Mottley,* 55 L. Ed.
297; Cases cited in 20 Rose's Notes, pages 204 & 205.

Proof of Damage. We have no argument with coun-
sel on the law of damages, but we submit as a fact that
there was no damage, and the chancellor found the fact
that there was no damage for the reason that the coal
on the open market in the Birmingham district was
quoted during the months in question at the same price
and in several of the months at a lower price than Stoner
& Company had contracted to pay, and whatever view
may be taken of the law of damages no damage could be
allowed unless some damage is shown or unless it can
be shown that there was an advance in the market price
and that the coal in question was worth more in the
open market than the contract called for.

*Alfred Stoner,* for appellants in reply.

The defense is resolved to one point, namely: Did the
order of the commission prohibit appellees from ship-
ping the coal? It would not be a defense to say that the
appellees interpreted the order as prohibiting. They
must show that they correctly construed the order as
prohibiting. They could not even defend on the ground
that the depot agent at the point of shipment miscon-
strued the order of the Commission. The order express-
ly stated that any representative of the Commission
should be governed by the order, and no authority was
delegated by the Commission. If any agent of a railroad
company had interfered with their legitimate consign-
ments of coal, appellees had their remedy by resorting

to the courts, and it is not even shown that appellees applied to the Commission for an interpretation of the order.

However the order of the Commerce Commission needed no elucidation for the reason that it would have been hard to make the order plainer. Appellees base their argument on an erroneous assumption. It is argued that the coal covered by the contract in the case at bar fell in class four and that three classes had priority over it. The order of the Commerce Commission refers to the class into which the contract fell as clause "d" and not as class "d", and then says in the note that there shall be no priority as between clauses "a", "b", "c", and "d". If the Commission had intended the construction placed upon the order by appellees, they would have placed the order of priority in four classes instead of four clauses in one class. Especially clear will our interpretation become when it is remembered that the order will be strictly construed as· being in derogation of the common law.

ANDERSON, J., delivered the opinion of the court.

Appellants, Stoner & Co., sued appellee, Blocton Export Coal Company, a foreign corporation, in the chancery court of Leflore county, for damages in the sum of one thousand seven hundred and fifty-eight dollars and sixty cents claimed to have been suffered by appellants on account of an alleged breach of contract by appellee, by the terms of which appellee sold and agreed to ship to appellants during the spring and summer of 1922 a quantity of coal for household use. Appellee answered making its answer a crossbill, denying the material allegations of appellants' bill, and seeking to recover from appellants a balance due on open account for coal theretofore delivered to appellants under said contract. There was a trial on the pleadings and proofs, and a decree rendered dismissing appellants' bill and awarding appel-

lee a recovery for the amount claimed from appellants by said cross-bill, from which decree appellants prosecute this appeal.

In the view taken by the court it becomes necessary to dispose of only two questions discussed in the briefs of counsel representing the respective parties. They are: First, whether appellee was justified in failing to fulfill said contract, by a certain order of the Interstate Commerce Commission governing the coal-carrying railroads of the country, which order will be hereinafter specifically set out; second, if appellee breached its contract, what is the measure of its liability to appellants? We will discuss these questions in the order stated.

The facts necessary to be understood in order to determine the first question are as follows: Appellee was engaged in the coal business in Alabama, selling its customers in Mississippi and elsewhere. Appellants were engaged in the retail coal business at Greenwood, in this state. On the 5th of April, 1922, appellants and appellee entered into a written contract by the terms of which appellee agreed to sell and ship to appellants, as ordered, from fifteen to twenty-five cars of lump coal at prices named in said contract. These shipments were to be made during the spring and summer of 1922 as ordered by the appellants. Several carload shipments were made as ordered. Then shipments were ordered by appellants which were not made by appellee. This occurred after August 5, 1922, the date of the order of the Interstate Commerce Commission which appellee relied on as a justification for failing to make shipments as ordered. These orders from appellants thereafter continued, and appellee failed to comply therewith until the 21st day of October, 1922, when appellants advised appellee that they were compelled to consider the contract as breached by appellee. The contract in question made no provision for failure to ship coal on account of strike, car shortage, or other contingency. Notwithstanding that fact, however, appellee undertakes to justify its failure to make ship-

ments as provided in said contract, by virtue of an amend-
ment to car service order No. 23 by the Interstate Com-
merce Commission, which appellee claims had the force
and effect of law, and that under which the coal-carrying
railroads of the country were prohibited from furnishing
cars for shipments of coal to retail dealers for household
use, except subject to prior rights of certain consumers.
The coal purchased by appellants from appellee was
lump, bituminous coal which had passed over screens with
openings of four inches, or larger, and was for household
use. The order of the Interstate Commerce Commis-
sion relied on by appellee as justifying its failure to ship
the coal in question, so far as necessary to consider, is in
the following language:

"It is ordered, that paragraph numbered 7 of the said
service order No. 23 adopted July 25, 1922, be, and it is
hereby amended and supplemented to read as follows ef-
fective on and after August 5, 1922:

"(7) That in the supply of cars to mines upon the
lines of any coal-loading carrier, such carrier is hereby
authorized and directed, to place, furnish, and assign
such coal mines with cars suitable for the loading and
transportation of coal in succession as may be required
for the following classes of purposes, and in following
order of classes, namely:

"Class 1. For such special purposes as may from
time to time be specially designated by the Commission
or its agent therefor. In designating special purposes
under this reservation, the Commission or its agent will
designate the class of relative priority, as class 1, class
2, class 3, class 4, or class 5, which such special purpose or
particular shipment or shipments shall receive.

"And subject thereto in order of priority:

"Class 2. (a) For fuel for railroad and other common
carriers, and for bunkering ships and vessels; (b) for
public utilities which directly serve the general public
under a franchise therefor, with street and interurban
railways, electric power and light, gas, water, and sewer

works; ice plants which directly serve the public general-
ly with ice, or supply refrigeration for human food
stuffs; hospitals; (c) for the United States, state, county,
or municipal governments, and for their hospitals,
· schools, and for their other public institutions—all to the
end that such common carriers, public utilities, *quasi*-
public utilities, and governments may be kept supplied
with coal for current use for such purposes, but not for
storage, exchange, or sale; (d) bituminous coal which
has passed over screens of four inches or larger open-
ing, coke, and anthracite coal, to be shipped to retail
dealers for household use.

"Note.—It is not intended by this paragraph to give
any priority as between classes a, b, c, and d hereof.

"And subject thereto in order of priority: .

"Class 3. (As to each coal-loading carrier which
reaches mines in Pennsylvania, Ohio, West Virginia,
Kentucky, Tennessee, and Alabama.) For bituminous
coal consigned to any Lake Erie port for transhipment
by water to ports upon Lake Superior.

"And subject thereto in order of priority:

"Class 4. (As to all such common carriers by rail-
road.) Coal for the production and manufacture of food-
stuffs and medicines and for the manufacture of con-
tainers therefor, for daily use but not for storage, ex-
change, or sale.

"And subject thereto in order of priority:

"Class 5. Other purposes.

"No coal embraced in classes 1, 2, 3, or 4 shall be sub-
ject to reconsignment or diversion except for some pur-
pose in the same class or a superior class in the order
of priority herein prescribed."

Before proceeding further with a discussion of this
question, it will probably be well to have in mind the fol-
lowing principles: Legislation by Congress under the
commerce clause of the Constitution (article 1, section
8, cl. 3) is the law of the land. It is controlling both on
the state and federal courts. The same is true of all

administrative orders for the regulation of interstate carriers, passed by the Interstate Commerce Commission in pursuance of such legislation by Congress.

The above car service order is that character of administrative order, and therefore both state and federal courts are bound to enforce it. And if because of said car service order of the Interstate Commerce Commission appellee was prevented from shipping the coal in question to appellants, then appellee had a complete defense to this action, because, as held by this court, which is in line with the authorities generally, that even though it be not provided for in the contract, still if a subsequent change is made in the law whereby performance of the contract becomes unlawful, its performance is excused. *Piaggio* v. *Somerville,* 119 Miss. 6, 80 So. 342.

The sharp difference between appellants and appellee is as to the meaning of the car service order in question. Appellants contend that said order provides for five classes of coal shipments, and preference is given to each class in the order named as follows: Class 1 has preference over four classes following it; class 2 is next in preference with priority over all classes following it; and the same is true of class 3 and class 4, class 5 being subject to preference in favor of all four classes preceding it. That the language in said service order following each class, namely, "And subject thereto in the order of priority," means simply that the five classes are to have priority in the order named. Furthermore, appellants contend that this is made plain by the note following class 2, in said order, which class 2 covers the character of coal here involved, which note is in the following language: "Note.—It is not intended by this paragraph to give any priority as between clauses a, b, c, and d hereof." Clause d of class 2 covers the character of the coal involved in this cause, to-wit, bituminous lump coal shipped to retail dealers for household use.

135 Miss.—26

Appellants' contention is that all four of the clauses in class 2 of this order, which are listed a, b, c, and d, are on a parity; that no one has preference over the others.

On the other hand, appellee contends that said three subdivisions or clauses of class 2 of said order constitutes three distinct sub-classes, each in the order stated having preference over those following. The trouble, however, with the contention of appellee is the plain unambiguous language of the note attached to class 2 above quoted. This note, which is a part of said order, simply says in so many words that there is to be no priority as between clauses a, b, c, and d of said class.

The coal involved here came within clause d of said class 2. Furthermore, appellants' construction of the order is borne out by the fact that it is more reasonable than that of appellee. We hold that there is no preference between said clauses; that the language at the conclusion of each of the said classes, "And subject thereto in order of priority," means that each class stated in said order is to be given priority over those classes following in numerical order, and that the note attached to class 2 is controlling.

The question as to the measure of damages which appellant may be entitled to recover seems simple of solution. In fact, there is little, if any, controversy between the parties as to this proposition. Appellants in order to recover for the loss suffered were not required to go into market and supply themselves with the coal which appellee had failed to ship them, but had the right to treat the contract as breached by appellee, and the measure of their damages is the difference between the contract price of the coal and the market price at the time and place of delivery. *Eaves & Co.* v. *Harris,* 95 Miss. 607, 49 So. 258; *Sussman, Warmser & Co.* v. *Seafood Co.,* 127 Miss. 420, 90 So. 116; 24 R. C. L. section 335.

The record with reference to the damages appellants may be entitled to recover is in such state of uncertainty

that we think the case should go back to the chancery court to ascertain what damages, if any, appellants suffered.

*Reversed and remanded.*

(Division A. April 14, 1924. Suggestion of Error Overruled May 19, 1924.)