ARTHUR DELAPIERRE CO. INC. v. CHICKASAW LUMBER CO.

[71 South. 872.]

1. SALES.  Contracts.  Construction.  Quantities.  Action by buyer.
    Damages.  Loss of profits and suspension of business.

   Where in a suit for breach of an oral contract to deliver timber,
   the testimony of plaintiff's witnesses was that defendant was
   to deliver between two million and three million feet of timber,
   if recovery can be had at all, it can only be for failure to deliver
   the smaller amount.

2. SALES.  Action by buyer.  Damages.  Loss of profits.  Suspension
    of business.

   In a suit for damages for failure to deliver timber bought for
   manufacture by plaintiff's sawmill, where the evidence failed
   to show that plaintiffs were unable, when the contract was
   breached to purchase similar timber in the market, but did show
   that they bought some timber, but not how much, and that the
   mill was shut down only a few weeks on account of the breach,
   in such case, plaintiffs were not entitled to recover more than
   the difference between the contract price and the price actually
   paid for timber to take the place of that contracted for, but, being
   unable to purchase in the market a sufficient amount to take
   the place of that contracted for, they were entitled to recover
   as damages the profits they would have made on the remainder
   of the logs they were unable to buy in the market and any other
   proximate damages growing out of the breach, but could not
   recover all the profits they would have made on all the timber
   if delivered.

APPEAL from the circuit court of Chickasaw county.
HON. J. L. BATES, Judge.

Suit by the Chickasaw Lumber Company against Ar-
thur Delapierre Company, incorporated.  From a judg-
ment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes*, for appellant.

*Flowers, Brown, Chambers & Cooper*, for appellee.

SYKES, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of the First district of Chickasaw county for seven thousand, five hundred dollars, damages for profits claimed to have been lost by the appellees because of the failure of the appellant to deliver to them at their mill certain logs claimed to have been purchased by appellees from appellant. The material allegations of the declaration necessary to an understanding of the case are about as follows, viz: That on or about the 7th day of April, 1909, the defendant entered into a contract with the plaintiffs, whereby it sold the plaintiffs the amount of two million, two hundred thousand feet of timber in logs, two hundred thousand feet of which was poplar, and two million feet of red oak and white oak; said defendant was to cut said timber and haul the same to Pyland, and there yard it for inspection, measurement, and delivery to the plaintiffs at that point, at certain specified prices. That the defendant, under this contract, delivered a certain number of logs to the plaintiffs, and then failed and refused, without just cause, to deliver the balance. Plaintiffs alleged that they were making a profit of twenty-three dollars and fifty cents per thousand feet on all poplar logs received from the defendant under this contract; that upon the oak logs they were to have made a profit of six dollars and ninety cents per thousand feet if the contract had been complied with, claiming in all, as their damages, the profits they would have made on the logs after they were manufactured and sold of over sixteen thousand dollars. They further claim that, owing to the refusal of the defendant to deliver logs according to this contract, they were greatly damaged by not being able to secure timber, and were compelled to stop running their sawmill and shut down; that under the contract, if the defendant had fulfilled the same, plaintiffs would have had sufficient timber to have kept their mill running for twelve months; that in view of their contract

with the defendant, they refused and failed to make con-
tracts with other people for logs; and that they were
greatly damaged because they had to pay the labor and
running expenses of the mill while the same was  shut
down, which damage amounted to the sum of five thou-
sand dollars, wherefore they sued, claiming as damages
over twenty-one thousand dollars.

The testimony of the plaintiffs in this case is that
their agent and an agent of the defendant made an oral
contract for the purchase and sale of these logs; the tes-
timony of the plaintiffs as to the exact  amount  being
rather indefinite.  Mr. A. F. Smith, who claims to have
made the contract on behalf of the plaintiffs, when asked
to tell the jury all about the contract, stated as follows:

"In the spring of 1909, Mr. Shepardson came up to
our mill on the M. & O. branch out here and wanted to
sell us some logs.  He said he had between two million
and three million feet of red and white oak, and between
two hundred thousand and three hundred thousand feet
of poplar; and we contracted with him for between two
million or three million feet of oak and between two hun-
dred thousand and three hundred thousand feet of pop-
lar."

It will therefore be seen that the contract as alleged
by the plaintiff, was for between two million and three
million feet of red and white oak, and between two hun-
dred thousand and three hundred thousand feet of pop-
lar.  If recovery can be had at all upon this contract, it
will have to be for the smaller amount as testified to by
this witness.  We might say, in passing, that the agent
of the defendant denied absolutely the making of the.
contract.  The testimony for the plaintiffs also shows
that the mill was shut down for several weeks, because
of the failure of the defendant to deliver this timber, and
that at other times they were not able to saw their full
capacity of timber because of the breach of said con-
tract.  It does not show expressly what efforts were
made by the plaintiffs to buy other logs of like kind and

character after said breach. It was contended by the appellant that Mr. Shepardson had no authority to sell over five hundred dollars worth of timber for the appellant at a time; that he exceeded his authority if he made the contract in suit here. The testimony in this case shows, however, that this party was the manager of the timber and of the mill of the appellant, in Chickasaw county, and that he had the apparent authority, at least, and was so held out to the world by the appellant, to make this contract. We, therefore, see no merit in this contention of the appellant.

It is contended by the appellant that the instructions as to the measure of damages given the plaintiffs are absolutely erroneous. The first instruction told the jury, in effect, that if they found for plaintiffs, they should—
"assess the damages at that amount that the jury reasonably believe from the evidence in the case would have been a reasonable profit that would have been made by the plaintiffs on the undelivered logs."

The second instruction, in effect, told them that, in assessing these damages—
"you are to take into consideration the contract price of said logs and what the evidence shows that they would have been worth to the plaintiffs had they been furnished according to the contract, deducting therefrom the cost of preparing the lumber from said logs, and the cost of marketing the same including the freight and all expenses."

From a consideration of the declaration and these instructions, it will be seen that it was the theory of the plaintiffs that because of the breach of the contract, the plaintiffs had to shut down their sawmill, and were thereby prevented from sawing the logs into lumber and making the profit they would have made from the sale of this lumber. If the testimony in this case had shown that the plaintiffs had a regularly established business for the sale of this lumber, which was known to the defendant at the time the contract was made, and that

because of a failure of the defendant to deliver the
logs, the plaintiffs were unable to·have gotten more logs
out of which to manufacture the lumber, thereby causing
the mill to shut down and preventing them from selling
the lumber, then the rule above announced would have
been correct, under the case of *White* v. *Leatherberry,*
82 Miss. 103, 34 So. 358. In this case, however, the testi-
mony does not show that the plaintiffs were unable, by
the exercise of reasonable care and diligence, to have gone
into the market and purchased other logs of like kind and
character. It shows that the plaintiffs bought some tim-
ber as a matter of fact, but not how much. The testimony
does not show that because of this breach, the mill was
shut down for the period of time during which it would
have taken to have sawed up this number of feet of timber;
in fact, the testimony shows that the mill was only shut
down for a short time. It is the contention of the appellees
in this case that they are entitled to recover these profits
regardless of the fact that during the greater portion
of this time their mill was running and manufacturing
logs into lumber which was being sold by them at a pro-
fit. In other words, it is the contention of the appellees
that they are entitled to keep, as profits, the profits they
made out of other timber bought by them and manufac-
tured into lumber during the time they would have been
sawing the timber delivered to them by the appellant, had
the appellant carried out its contract. The testimony
shows that the appellees did make a profit out of the tim-
ber purchased by them after the breach of contract and
manufactured by them into lumber. In other words, if
the contention in this case of the appellees be sound, then
the appellees would be making double profits, that is
to say, the profits that they made out of the timber pur-
chased by them after a breach of this contract, and the
profits that they would have made out of the manufac-
ture of the logs purchased by them from the appellant.
This is not the law. The mill of the plaintiffs was one
of limited capacity, ranging between seventeen thousand

and twenty-five thousand feet of timber a day. It would have taken in the neighborhood of ten or twelve months to have sawn all the timber under this contract; while, as a matter of fact according to the testimony, the mill was only shut down for a few weeks because of the breach of said contract. The true measure of damages in this case is as follows:

When the defendant failed to deliver these logs, it was then the duty of the plaintiffs to use reasonable care and diligence to purchase other logs of like kind and character to manufacture into lumber. They are entitled to recover as damages the difference between the contract price and the price actually paid for logs to take the place of the others contracted for. If they were unable to purchase in the open market a sufficient number of logs to take the place of those contracted for, then they are entitled to recover as damages the profits they would have made on the manufactured lumber of this remainder of logs they were unable to buy in the market. If there were any other proximate damages growing out of the breach of this contract, then these damages could also be recovered by the plaintiffs. As to the item of five thousand dollars expenses because of the mill being shut down, we are unable to see how that could be a proper item of damages, because this item is necessarily included in the profits they would have made on the logs had they been delivered. Counsel for appellees, in his able presentation of the case, makes the contention that, regardless of whether or not other logs could have been bought in the market, and regardless of the fact that a part of them were bought, and that the mill was running nearly all the time, this court should not take this into consideration, and that plaintiffs can recover the profits they would have made on the logs when manufactured into lumber. Learned counsel misconceive the case of *White* v. *Leatherberry* and the other decisions of this court and the authorities cited in the White Case. He absolutely overlooks the rule that it is always the duty of the injured party

to use reasonable care and diligence to minimize his damages; and, in this case, this duty was to attempt to purchase, in the open market, other logs to take the place of those the defendant failed to deliver. And the defendant is liable only for the difference between the profits actually made and those plaintiffs would have made had not the contract been breached. Since the mill was one of limited capacity, it is obvious that the plaintiffs could not have sawed but a certain amount of lumber a day, and that, in this case, it would have taken them in the neighborhood of ten or twelve months to have sawn the lumber contracted for. Consequently, if this timber had been delivered, they certainly could not have made any other profit out of any other timber while they were engaged in sawing this into lumber. Appellees contend that they could have put the timber away and kept it and sawed it whenever they got ready, and, for this reason, can claim these profits in this case. This, however, is not the law. If it were, a party who had sold a number of bales of cotton, say for fifteen cents per pound under an unusually good contract, when cotton was worth only ten cents per pound in the market, and who buys this cotton from another party in the open market for ten cents per pound, explaining to his vendor that he is buying it for delivery to another party at fifteen cents per pound, upon a failure of his vendor to deliver the cotton, then, instead of purchasing the cotton in the open market to replace that not delivered to him, he could, simply without any effort on his part, recover of his vendor the five cents per pound profits he would have made from the sale of the cotton, when, as a matter of fact, he could have bought the cotton in the market for the same price the party had agreed to sell it to him for, thereby not being damaged one cent. The controlling features in the recovery of loss of profits for the breach of contracts of this character are: First, that when the contract was made, the seller knew for what the com-

modity was being sold, consequently that he contracted with this idea; second, that the purchaser is unable to buy this commodity in the market with which to fill his contracts. This is the rule laid down in the case of *White v. Leatherberry,* and is the general rule.

*Reversed and remanded.*