COBB v. COLE.

[91 South. 705. No. 22453.]

1. SALES. *Demand for and payment prior to time fixed by contract held not to constitute a breach.*

Plaintiff sued defendant for damages for failing to deliver lumber to him according to the contract; defendant admitted nondelivery of the lumber, and defended on the ground that plaintiff had first breached the contract, and thereby relieved defendant from compliance therewith, by demanding of the defendant a payment on open account, which under the contract between them was not to be paid until said lumber had been delivered to the plaintiff and the defendant, credited with the proceeds thereof, but which payment however was made by the defendant without plaintiff having taken any steps to enforce the same by legal proceedings. *Held,* that defendant was not relieved by such demand and payment on account from delivering such lumber to the plaintiff according to the contract; that such demand and payment did not amount to a breach of the contract on the part of the plaintiff.

2. SALES. *Measure of damages for seller's breach is difference between contract and market prices at time and place of delivery.*

In a suit by the purchaser against the seller for damages for the breach of a contract by the latter to deliver personal property to the former, the measure of damages is the difference between the contract price and the market price of such property at the time and place of delivery as provided in the contract of sale.

APPEAL from circuit court of Lauderdale county.

HON. J. D. FATHEREE, Judge.

Suit by Elliott Cobb against W. J. Cole. Verdict and judgment in favor of the defendant, and the plaintiff appeals. Reversed and remanded.

Appellant, Elliott Cobb, sued appellee, W. J. Cole, in the circuit court of Lauderdale county, setting out his case in a declaration of two counts. Appellee pleaded the general issue to both counts, and gave notice thereunder of an offset. There was a trial and a verdict and judgment

for the appellee on his offset, from which judgment appellant prosecutes this appeal. The two counts of the declaration are based on entirely separate and distinct causes of action. By the first count appellant sought to recover damages alleged to have been suffered by him on account of a breach of contract by the appellee to deliver to appellant one hundred and twenty-five thousand feet of lumber. The damages laid was the difference between the contract price and the market price of the lumber at the time of the alleged breach of the contract. By the second count of the declaration appellant sought to recover the balance alleged to be due him by appellee on open account. This account involved items growing out of, in part, the dealings of the parties under the contract sued on in the first count, as well as transactions between the parties wholly apart and distinct from said contract, covering a long course of dealings between them in reference to divers and sundry transactions in lumber.

We will first consider the assignment of error that the court should have, as requested, directed a verdict on the first count for the appellant. In doing so the facts most favorable to appellee's case which the evidence either establishes directly or by reasonable inference should be treated as proven. So considering the testimony, the following case was developed by the evidence: The appellant was a lumber merchant, with an office and headquarters at Meridian. He was engaged in financing millmen and others in the vicinity of Meridian, and purchasing lumber from them for shipment to his customers, who were mainly north of the Ohio river. Appellee was a millman. He was experienced in going into the forest and cutting and manufacturing standing timber into lumber. Appellee bought the timber land in Clarke county known as the Farden tract and the Lyerly tract, the purchase price of which was furnished the appellee by appellant. Appellant sold the appellee a sawmill with which to manufacture this timber, and appellee agreed to manufacture it into lumber on the orders of appellant, for shipment to the

customers of the latter at twelve dollars per thousand feet, and in addition one dollar and twenty-five cents per thousand feet for dressing the same. Appellee's operations under this agreement with appellant began in 1917 and continued up to the summer of 1919. In March, 1918, by agreement, between appellant and appellee, the price of rough lumber was changed from twelve dollars to fourteen dollars and fifty cents per thousand feet, and the price for dressing from one dollar and twenty-five cents to one dollar and seventy-five cents per thousand. feet, and so continued thereafter. Under the terms of the agreement between the parties appellant was to finance the whole scheme. In short, besides advancing the money to appellee for the purchase price of the timber, appellant agreed and did furnish and sell appellee a sawmill with which to manufacture the lumber, and also furnished him all of the funds with which to meet his pay rolls incurred in getting out the timber and manufacturing it into lumber. Appellee bound himself by said contract to sell to appellant at the prices named the entire output of said two tracts of timber, and to ship the same on appellant's orders. Up to the early part of 1919 there had been cut from said timber land by the appellee and manufactured into lumber and shipped out on the orders of appellant probably as much as five hundred cars amounting to something like from five million to six million feet of lumber. By March 5, 1919, all the timber on said two tracts of land had been by appellee cut and manufactured into lumber, and there remained for shipment, besides a small quantity at Barnett, a railroad station from which most of said lumber was shipped, about one hundred and twenty-five thousand feet out in the woods at the mill, some distance from any railroad. This one hundred and twenty-five thousand feet of lumber was the basis for appellant's cause of action set out in the first count of his declaration. It was agreed between the parties that all money advanced by appellant to appellee for any and all purposes was to be repaid from the manufactured lumber sold appellant by appellee from

these two tracts of land; and if, when all of the lumber on said land had been cut off and manufactured and delivered on appellant's orders under said contract, there remained any balance due appellant by appellee, the latter was to pay it. In other words, appellee was not to be called upon to pay appellant any money advanced by appellant to him on account of said transactions until the close of said dealings, when, if crediting appellee with all said lumber, there should remain a balance due appellant by him, he was then to pay it and not until then. There is no controversy between the parties as to the terms of the contract with reference to this balance of one hundred and twenty-five thousand feet which appellee failed to ship out on appellant's orders.

On the 22d day of July, 1919, appellee notified appellant that he declined to ship out on the order of appellant theretofore given the said one hundred and twenty-five thousand feet of lumber. His reason for so doing was that he was relieved from complying with his contract to ship out said lumber because appellant had first breached said contract in this, that appellant had called on him and demanded a cash payment on account of three thousand dollars, which he had no right to do under the terms of the contract until all of said lumber from said land had been manufactured by appellee and shipped out on appellant's orders. Appellee testified that some time in February or March, 1919, he had a conversation with appellant, in which appellant demanded of him a cash payment on account of three thousand dollars, and, using appellee's language in response to that request, he said:

"I told him that if he waited until all of the lumber was shipped that I would pay him all that I owed him; that if I paid him three thousand dollars he would not be entitled to the money and the lumber too."

He was then asked the question: "Then what did he say about the three thousand dollars?" To which he responded, "He wanted the three thousand dollars." About the time this conversation took place, whether before or

afterwards, is not certain, but on the 5th of March, 1919, appellee wrote appellant a letter, in which he stated, among other things:

"We have about one hundred and twenty-five thousand out in the woods that will haul in as soon as the weather permits. . . . As soon as we can get boards run and run the stock down a little, will want to pay you what I am due you, if any. . . . Now I don't want you to feel like you will have any trouble getting your money, if any is due you, as I can get it any time."

On June 13, 1919, appellant wrote appellee, stating, among other things, the following:

"As I am needing some money at the present time, I thought it might be convenient for you to give a check for this amount or any part of it and in this way reduce the account and interest account."

And on June 23, 1919, appellant wrote appellee again as follows:

Mr. Hanner says you will be down at Barnett this week, and I do hope that you will get that stock at the mill hauled in so we can ship some of it.

"In the meantime, I wish, if convenient, you would let me have check for about three thousand dollars, and reduce your account this much, as I am needing the money at the present time for other investments."

And on July 7, 1919, appellant wrote appellee in part as follows:

"We also again call your attention to the second paragraph of our letter of June 23, in which we asked you to send us a check for about three thousand dollars, as we are constantly buying new timbers and also outside shipments, and we are in need of this money. After giving us a check for three thousand dollars and shipping all of the lumber of ours that you have due us, there will still be a balance due us; so you are playing perfectly safe. As above stated, we would like to get this check so that we may use it in our business."

On July 11, 1919, appellee wrote appellant a letter in part as follows:

"Now in regards to the stock in the woods, I have decided not to worry about that at all, as I have made several attempts to get it in, and each time it has rained me out, and I don't think there is any use to try to get it in until it gets good and dry, as I cannot haul it over my track and will have to be hauled in wagons through prairie. Now if you have any orders you expect to fill from this stock, I think it would be better for you to place them somewhere else, as I have been begging people to haul this stuff, and now I am going to wait for them to come to me, and *as soon as we get this stock that we have got at Barnett, which I hope in the next four or five days, I will give you a check for every cent that I owe you.*"

On July 21, 1919, appellee made a payment to appellant on account of three thousand, six hundred dollars, instead of three thousand dollars, which latter amount had been requested by appellant. On July 22, 1919, appellee notified appellant for the first time that he declined to ship him the one hundred and twenty-five thousand feet of lumber, the balance involved in their dealings, and soon thereafter, in August, 1919, appellee sold the said one hundred and twenty-five thousand feet of lumber to another party.

The appellee admitted on cross-examination that appellant had never released him from the contract to ship this lumber, and, furthermore, that he intended to ship it according to contract, notwithstanding appellant had called on him for money which he had no right to demand, until July 22, 1919, which was after he had paid appellant the three thousand, six hundred dollars on account; and that then it was he notified appellant for the first time he would not ship out the balance of the lumber. Appellee admitted in his testimony that after paying appellant three thousand dollars, the amount demanded by appellant on account, there might still be due appellant, after crediting said one hundred and twenty-five thousand feet of lumber, some amount. He admitted this in a most forceful manner

in his letter to appellant of March 5, 1919, wherein he stated he was going to ship out the balance of the lumber due on contract, and also pay appellant, after so doing, anything remaining due on account.

*R. M. Bordeaux,* for appellant.

*Baskin & Wilbourn* and *M. W. Reily,* for appellee.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above.) We have here a seller of lumber who admits that he failed to deliver to the purchaser the lumber in question according to contract, but contends that he was justified in so doing by reason of the fact that the purchaser, to whom he was indebted on open account in an amount not yet due, demanded of him a payment on account, to which demand he acceded. In other words, the appellee says he was justified in refusing to deliver the lumber to appellant according to contract, because appellant had first breached the contract by demanding payment of him, appellee, on account, to which demand he acceded, in violation of the contract.

We are considering the question as if it were true, as contended by appellee, that appellant without any right made *demand* on appellee for payment on account. The correspondence between the parties, however, shows that no such demand was ever made. Taking what the correspondence shows in its strongest light for appellee, it simply amounted to a request on the part of appellant of appellee for the payment of three thousand on account because of the delay of appellee in shipping out the lumber; the needs of appellant, and in view of the further fact, as specifically stated in appellant's letter of July 7, 1919:

"After giving us a check for three thousand dollars and shipping all the lumber of ours that you have due us, there will still be a balance due us; so you are playing perfectly safe."

However, conceding that appellant demanded of appellee a payment of three thousand dollars on account, when he had no right under the contract to do so, to which demand appellee acceded, would that amount to a breach of the contract on the part of the appellant, justifying appellee in refusing to ship out the lumber in question? We think not. A mere demand by one party to a contract of the other party that the latter do something beneficial to the former, which demand is not authorized by the contract, cannot be said to be a breach of the contract by, the party making such demand. At most it would manifest only an effort or desire to breach the contract; and, where the other party to the contract acceded to the demand without claiming a release from performance on his part, we are unable to see how he can complain. Such conduct, to say the least of it, would amount to a condonement of the breach of the contract, if such demand could in any sense be called a breach. The appellee was under no obligation to pay the three thousand dollars demanded by appellant. All he had to do was to refuse to pay it until all the lumber was shipped out and he had been credited with the proceeds. He could not agree to a breach of the contract and then take advantage of such breach, and profit by it. That is exactly the attitude of appellee in this case. So we conclude that the evidence shows without conflict that appellee breached the contract in question, and therefore the trial court should have directed a verdict on the first count in the declaration for appellant as requested.

On the question of the amount of damages appellant was entitled to recover for the breach of the contract as averred in the first count, appellee contends that there was no evidence that appellant was compelled to go out into the market and buy other lumber in the place of that due him by appellee, and therefore, under the authority of *Delapierre* v. *Chickasaw Lbr. Co.,* 111 Miss. 607, 71 So. 872, he showed no loss. We do not think that case has any application to the facts of this case, and that this is so patent it is not necessary to distinguish the two cases. Here we

have a breach of contract by the seller to deliver to the purchaser specific lumber, certain in quantity, at an agreed price.   It seems clear that the measure of damages is the difference between the contract price and the market price at the time and place of delivery.   That is what this court recently held in *Sussman, Wormser & Co.* v. *Sea Food Co.*, (Miss.) 90 So. 116, and it is a well-established old principle.   We are therefore of opinion there is no merit in appellee's said contention.

Appellant assigns several errors as having been committed by the court in the trial of the questions arising out of the second court in the declaration, as well as those arising out of appellee's offset, notice of which was given under the general issue.   We have looked carefully into these assignments of error, and find no merit in any of them.   As we understand the record, those issues were properly tried and submitted to the jury on appropriate instructions.   Only well-established principles of law were involved, not difficult of application to the facts before the court.   We therefore do not lengthen this opinion in order to treat them; the bench and bar would not be benefited.

*Reversed and remanded.*