Ingram Day Lumber Co. v. Germain Co.*

(Division B. March 10, 1924. Suggestion of Error Overruled June 16, 1924.).

[100 So. 281. No. 23921.]

Sales. *Manufacturer of railroad ties receiving order may deliver maximum or minimum number; term "as soon as possible" affecting delivery held to be reasonable time.*

Where a corporation engaged in buying railroad cross-ties gives an order for ties—from six thousand to ten thousand—deliverable "as soon as possible" to a manufacturer of such ties, the manufacturer, being the first party called upon to perform, has the option to furnish the full number or the minimum number. The words "as soon as possible" mean within a reasonable time according to all the circumstances, and, where the buyer is in default in inspecting the ties and asks for indulgence after the expiration of ninety days from the date of contract, it cannot insist thereafter that ninety days was the limit for completing the contract, and a decree so finding under the circumstances stated in the opinion will be reversed.

*Headnote 1. Sales, 35 Cyc, p. 209 (1925 Anno.) Sales, 35 Cyc, p. 181.

Appeal from chancery court of Harrison county.
Hon. V. A. Griffith, Chancellor.

Suit by the Ingram Day Lumber Company against the Germain Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*White & Ford,* for appellant.

It is the settled law that under a contract of this kind the seller has the maximum quantity. *Arthur Delapierre Co., Inc.* v. *Chickasaw Lbr. Co.,* 111 Miss. 607; L. R. A. 1918D, 580 and note, page 583. It is the settled law of this state that even if time is of the essence of a contract, that time can be waived just like anything else. *Phillip Gruner Lumber Co.* v. *Algonquin Lumber Co.,* 123 Miss. 157. However, the evidence shows without dis-

pute that the ties were all ready and tendered within the arbitrary period of ninety days fixed by the court. But as a secondary position, suppose we relied on this authority, we have a waiver both by express agreement due to the continued promises to get inspectors and take the ties, and also by the conduct of the appellee in not accepting what was tendered and in holding out to appellant that it would take them as soon as it could get inspectors.

This contract necessarily contemplated delivery in installments and in such instances prompt delivery of installments is all that is required and a failure to accept such installments would justify the seller in not performing further and suing for a breach.

When the Pittsburgh office of the Germain Company notified Mobile office not to take up more than six thousand ties, should not this information have been imparted to appellant? Smith testifies this notice was sent to him in December, 1920. Yet they put us off with promises to send inspectors. They said "bear with us" until we get inspectors. This, of course, lulled appellant into believing appellee would do what it said.

*T. C. Hannah,* for appellee.

Learned counsel cites the case of *Delapierre* v. *Chickasaw Lumber Company,* 111 Miss. 607, in support of the proposition that: "It is the settled law that under a contract of this kind, the seller has the right to deliver the maximum quantity."

I readily concede that the appellant here, the Ingram Day Lumber Company, had the right to elect whether it would deliver six thousand or ten thousand ties under this contract. However, when it once made an election, that election was irrevocable. See Mechem on Sales, section 1171. The only question presented by this whole record is the question presented by and answered in the case of *Starnes* v. *Nation,* 97 So. 881, wherein the court quotes with approval from *Davis* v. *Richardson,* 45 Miss. 499, 7 Am. Rep. 792, as follows: "In this court,

however, on purely a question of fact, the inquiry is not whether the chancellor was right, but was he wrong, clearly wrong. The burden is on the party contesting the decree to prove that it was founded upon insufficient testimony. If, upon a review of it, it appears that the chancellor may have fairly reached the conclusions he did, we would not be disposed to set aside the decree, although our minds might be inclined to a different result.''

I therefore respectfully submit that the appellant has the burden of showing that the chancellor was wrong about his understanding of the facts, and I further respectfully submit that a clear understanding of this case and the proper analysis of this record will fail the appellant in meeting this burden.

Ethridge, J., delivered the opinion of the court.

The appellant sued the appellee in the chancery court of Harrison county for three thousand two hundred forty-nine dollars and seventy cents, for railroad cross-ties manufactured by the appellant for the appellee under a contract made by correspondence on the 17th day of October, 1920. The appellee sent the appellant the following order:

The Germain Company.
"Home Office: Pittsburgh, Penn'a.

"Mobile, Ala., Oct. 17, 1920.

"Ingram Day Lumber Co., Yarbo, Ala.

| Our Order No. —<br>Telegraph Code — | Ship to: The Germain Company<br>Pennsylvania R. R. Co.<br>At Destination to be named later at — State |
| --- | --- |

— County — Frt.
Rate, L.

"Show the Germain Co. on Bill Lading as shippers.

"Route via — To make — R. R. delivery at destination.
...........................................................................
...........................................................................

"Bill of lading must show full routing. Note—Order No., Car No., and initials and destination on invoice. Send bill lading, giving weight and freight rate, with invoice to Pittsburgh, Pa. Make all drafts on Pittsburgh office. 'All contracts and orders subject to acceptance and confirmation of Pittsburgh office.'

Time of shipment is the essence of this order. No pieces to be shipped in multiples unless so ordered. This order must be filled exact.

| Item. | Amount. | Size. | Length. |
|-------|---------|-------|---------|

6,000 to 10,000 hewn YP heart ties, standard quality by U. S. R. A. Specifications, to run about 75% or more #5 and #4. Balance #3 and #2 ties.

Prices and sizes as follows:

7x9x8' 6"    $1.40 f.o.b. cars A. T. & N. R. R. stations
7x8x8' 6"     1.30    "      "      "      "      "
6x8x8' 6"     1.20    "      "      "      "      "
6x7x8' 6"     1.00    "      "      "      "      "

Inspection at loading point by railway inspector.

"Payment net cash as soon as car is loaded and B/L received.

"Delivery as cars are placed, to be shipped complete as soon as possible.

"Buyer agrees to use every effort to get cars either from A. T. & N. or having cars billed down from Northern roads to move above ties, but does not guarantee placement of cars.

"[Signed] The Germain Company,

"By J. Hamilton Smith.

"Mail original bill of lading and invoice to Pittsburgh office.

"Send copy of invoice to Mobile office."

Accompanying this order was a letter in which it was stated:

"As agreed upon with you we will have the cars billed to you if possible, but don't want to positively guarantee this as explained to you, for the reason that while we are now having a bunch of cars billed to A. T. & N., it has been only a short time since they would not let us do this. The Pennsylvania people say they will always be very glad to send the cars as they are doing now, but that the entire matter is in the hands of the Car Commission of the I. C. C. and there is no telling when they will stop them, and the matter being out of their hands, they

cannot guarantee it, but the probabilities are that they will continue to allow us to send the cars.''

This letter was sent to the Yarbo, Ala., office of the appellant and handled by Mr. Byrne, superintendent of the Yarbo Mill of appellant. Mr. Byrne wrote the main office the following memorandum:

''This is in line with agreement, but have them eliminate shipment complete by December 21st. It would be impossible for us to complete contract by that time.''

On October 28, 1920, appellant wrote as follows:

''We are just in receipt of copies of order, recently placed by you with our Mr. Byrne at Yarbo, Ala., for six to ten thousand Hewn Y. P. heart ties.

''We note wherein you advise shipment complete by December 31, 1920. Mr. Byrne advises that it will be impossible to complete this shipment by that time.

''If it is agreeable to you to eliminate that clause of the contract would be pleased to handle same accordingly.

''We have had a call in for Mr. Smith to-day, but was advised he was out of town, and would not be back before Saturday.

''We would thank you to have him 'phone' us immediately upon his return regarding the points mentioned and we would then forward you confirming order covering this business.''

On November 4, 1920, appellant wrote appellee as follows:

''Confirming phone conversation with your Mr. Stewart of yesterday, we are inclosing you herewith our confirming order covering six to ten thousand hewn YP heart ties.

''You will note that we have changed the date of delivery to be completed December 31, 1920, as early as possible per agreement over phone with you yesterday.

''As you state that you have had the matter up with your Mr. Smith a few days ago, and that he advised you that this would be satisfactory. We wish to thank you for this business.''

On November 3, 1920, the appellee wrote appellant agreeing to eliminate the clause about January 1st delivery. This letter was received after appellant had mailed the confirmation making delivery ''as cars are placed; as soon as possible.'' On November 5, 1920, appellant acknowledged receipt of the letter of November 3, 1920, and called attention to the fact that the confirmation had been sent. The confirmation was sent to the Pittsburgh office instead of the Mobile office of the appellee. The confirmation was received by the appellee and no objection was made thereto. The appellant manufactured a portion of the ties for this order, and in December, 1920, the appellee having obtained no cars and having sent no inspector, and appellant having ties ready for shipment, obtained five cars for loading the ties and notified the appellee to send an inspector; but the appellee did not do so, and the cars had to be released back to the railroad. Appellee failed to take any steps towards taking up the ties, and on February 2, 1921, the appellant wrote the appellee that the ties were ready and to please send the inspector to take them up, saying in the letter:

''Referring to your contract of October 17th with our Yarbo, Alabama, Mill for six to ten thousand hewn yellow pine heart ties standard, for shipment to the Pennsylvania Railroad Company; we now understand from 'phone conversation between your Mr. Smith and the writer that you are having trouble in getting the Pennsylvania Railroad Company to send their inspector to take up these ties. As explained to you, our Mr. Byrne informs us that he has the ties ready and that it is necessary that same be loaded without further delay. We must, therefore, insist that you arrange to begin loading these ties at the earliest possible moment.

''We understand that you will again communicate with the Pennsylvania Railroad Company by wire urging that they send their inspector, but that you are rather doubt-

ful of being able to get the Pennsylvania Railroad inspector to take the ties up very soon.

"We have pointed out to you that our contract is with the Germain Company and this will serve as formal notice that the ties are ready and we are anxious to begin loading immediately and that we will look to you to give the matter your immediate attention.

"In the event that you do not desire to move these ties right away, we suggest that you send your man and have same checked up and send us settlement for same."

Nothing was done by the appellee, and on the 15th of February, 1921, the appellant wrote the appellee as follows:

"Our Yarbo, Alabama, office just called us over the long-distance telephone and advised that your tie inspector left there Saturday and has failed as yet to return.

"We have just wired you as per the confirmation inclosed requesting that you rush an inspector to Yarbo to take up the balance of the ties to apply against your order. We trust that you will give the matter your immediate attention."

On February 16, 1921, the appellee replied to a telegram to rush an inspector to Yarbo, Ala., to take up balance of ties, writing as follows:

"Your wire 15th reading as follows: 'Rush inspector Yarbo, Alabama, to take up balance ties.'

"We regret to advise that the Pennsylvania Railroad have wired that they will positively not accept any more ties, subject to inspection at destination, but will furnish inspector 'as early as possible.'

"Just as soon as we can secure an available Penna. inspector we will arrange to have him at Yarbo to take up the remaining two thousand ties due on this order. In the meantime we ask that you kindly bear with us until we can secure inspector from the Penna. Railroad which we trust will not be long."

On February 18, 1921, the appellant wrote the appellee as follows:

"We are in receipt of your letter of the 17th acknowledging the receipt of our telegram in which we requested you to rush your inspector to Yarbo, Ala., to take up the balance of the railroad ties.

"We observe that you state that the Pennsylvania Railroad Company will furnish the inspector as early as possible. We do not quite understand what you mean in stating that they positively will not accept any more ties subject to inspection at destination, as for your information we do not ship subject to inspection at destination.

"We assume that you now have the inspector at Yarbo and that you will arrange to have him complete the order while there."

On February 22, 1921, the appellee wrote to appellant as follows:

"Replying to your letter 18th inst. with reference to the remaining ties at Yarbo.

"What we meant by destination inspection is this: Shipping ties that are not inspected at loading point by a regular Pennsylvania inspector. We fully appreciate that you do not ship subject to destination inspection, but such ties as we ship that have not been hammered at loading point by an authorized Pennsylvania inspector are for destination inspection, in so far as we are concerned, and the purpose of our letter of February 17th was to advise you that the Pennsylvania Railroad positively refuses to accept any further shipments from us that have not been inspected at loading point by their regular inspectors. We trust that you will now understand the situation.

"Just as soon as we can secure the necessary inspector from the Pennsylvania Railroad, which we hope will be within the near future, we will arrange to have your ties inspected, but in the meantime we are absolutely powerless to take your ties, as we have no other order on which we can apply them."

On February 26, 1921, the appellant replied to the above letter as follows:

"Referring to your letter of the 22d, also to recent visit of the writer, we understand that you will get the Pennsylvania Railroad Company to send their inspector to Yarbo at the earliest possible moment. We certainly trust you will be able to get this inspector within the next two weeks."

On March 9, 1921, the appellant wrote the appellee as follows:

"Our Yarbo manager, Mr. W. W. Byrne, called us over long-distance phone and informed us that the Pennsylvania R. R. inspector was there taking up the ties. He stated, however, that your Mr. Smith had informed him that he would not take the entire quantity which we have prepared. Mr. Byrne estimated that he would have about fifteen hundred ties above the quantity which Mr. Smith instructed the Pennsylvania inspector to take up.

"In view of this fact that the maximum quantity of the order calls for ten thousand ties, and as we will only have shipped approximately six thousand on the instructions furnished the inspector by your Mr. Smith, we trust you will arrange to take the additional quantity which we have prepared, and we will thank you to get in touch with the Pennsylvania inspector immediately and instruct him to take up the additional quantity of approximately fifteen hundred ties."

On March 12, 1921, the appellee wrote the appellant answering the above letter, as follows:

"Answering your letter of the 9th inst. relative to heart pine ties.

"As you are doubtless aware the Pennsylvania Railroad, both lines east and west, have canceled all their contracts for cross-ties, and in our handling with them for permission to ship such ties as we had given formal orders to cover, they agreed to accept only the minimum quantities as called for by the several orders that we had placed. In the case of your order this quantity is

six thousand ties, and we secured permission from them to accept only that number.

"We will have our Pittsburgh office handle further with the Pennsylvania Railroad and in event they will authorize inspection of the fifteen hundred ties mentioned by you, we will be glad to arrange accordingly."

On March 14, 1921, the appellant wrote the appellee as follows:

"Acknowledging receipt of yours of the 12th replying to ours of the 9th relative to heart pine ties, we note what you have to say with reference to the Pennsylvania Railway. However as we have some fifteen hundred or more ties on hand, prepared applying on your order, we will thank you to have the Pennsylvania Railway inspector to report immediately to inspect these ties."

On March 28, 1921, the appellant wrote the appellee as follows:

"Our Yarbo Mill informs us that you inspected a quantity of these ties which were not loaded on account of the lack of equipment at the time, and inasmuch as we are now quite anxious to ship the ties out and as equipment is more plentiful, we trust you will authorize them to go ahead and load the ties, or, better still, arrange to send inspector to inspect the balance of the ties prepared to apply against your order."

On April 4, 1921, the appellant again wrote the appellee as follows:

"We wrote you recently advising that Yarbo had on hand upwards of two thousand ties they had prepared to apply against your order. We are just in receipt of a communication from L. E. Shaw advising that he had on hand three thousand to thirty-five hundred ties prepared to apply against this order.

"You advised us some time since that you would endeavor to get the Pennsylvania Railroad Company inspector to take up the ties within the near future. Will you now kindly bring pressure and get their inspector to go to Yarbo at the earliest possible moment?"

On April 5, 1921, the appellant again wrote the appellee that the maximum quantity of the order was ten thousand ties; that the records showed shipment of four thousand five hundred thirty-one ties, leaving a balance of five thousand four hundred sixty-nine; that Mr. Byrne had approximately two thousand ties prepared to apply against this order; that Mr. Shaw had approximately three thousand to thirty-five hundred ties prepared to apply against this order, and further stating they had the full number of ties prepared to apply against the order and were anxious to move the ties; that as the shipments had been delayed on account of failure to send the inspector, urged the appellee to arrange to move the five thousand four hundred sixty-nine ties without further delay.

On April 7, 1921, the appellee wrote the appellant as follows:

"With reference to your letter 5th inst., your file 1405, we are sending this letter to our Pittsburgh office who will handle with you direct."

On April 11, 1921, the Pittsburgh office replied to appellant's letter sent by the Mobile office as follows:

"Your letter of the 5th inst. to our Mobile office has been referred to the writer for attention. This contract calls for a total quantity of ties between six thousand to ten thousand pieces. There was no guaranty on either your part or our own that we would accept, or that you would ship more than a minimum of six thousand pieces.

"Some months ago we notified our Mobile office that we could handle the minimum quantity of ties specified on your order, in fact, we were after Mobile, during December, to take up these ties, as at that time we needed them very badly, but understood that you did not have the ties available.

"All contracts that we have, have either been completed or canceled, in fact our Pennsylvania Railroad contract has been canceled, and we therefore are not in position to take any more ties from you.

"It is to be regretted that at the time you made this contract with us that you did not fill it as you not only greatly disappointed us but caused two of our customers considerable embarrassment because you did not make shipment at the time the contract was authorized by the Pittsburgh office.

"If we have taken from you a total of six thousand ties, please consider this order as completed. If we have not taken a total of six thousand pieces, then we will fill our contract regardless of the fact that our orders have been canceled, and we will take the remaining balance from you up to the minimum of six thousand pieces, and the order will then have to be considered as complete.

"We are sending a copy of this letter to our Mobile, Alabama, office, and we therefore would ask that you make up at once a complete statement showing just how many cars and the total number of ties that have been accepted and shipped, and we will take up the balance to make the minimum of six thousand pieces, but that is all that we can do for you under existing conditions.

"Please accept this letter as final, relative to this matter, and again expressing our disappointment at your not completing this order at the time it was placed with you, with the reasonable dispatch that we expected to secure from you."

On the 15th of April, 1921, the appellant replied to the appellee at the Pittsburgh office, stating that they had shipped to apply against the maximum quantity four thousand five hundred thirty-one pieces, making the balance unshipped five thousand four hundred sixty-nine pieces, and that it had on hand approximately five thousand five hundred ties, and "feel that you should accept same to apply against your contract." And further stated that appellant understood the Pennsylvania tie contract with the appellee had been canceled, but that the appellant was not responsible for the cancellation

and saw no reason why it should be asked to cancel the unshipped portion of the contract between the appellant and the appellee, and that it felt it had the right to insist that appellee take the maximum quantity, but as values had declined, suggested that appellee accept one-half the difference between the minimum and maximum quantity, making a total of eight thousand ties at the contract price, and after this quantity is shipped that it would have from two thousand to twenty-five hundred ties which it would be willing to let appellee have at a slight reduction in price, provided they were shipped along with the others. To which the appellee replied it was not bound to accept in excess of six thousand ties.

There is a great deal of correspondence and a great deal of testimony in the record. The manager of the Mobile office of the appellee testified that at the time of giving the order they had a contract with the Long Island Railroad for ties and that they intended to apply the ties on the contract here involved on that contract, and if appellant had delivered ten thousand ties prior to the 15th of January that it would have accepted them, but it would not have accepted more than six thousand ties after that date. The correspondence referred to and the other correspondence show that the appellee insisted that it was not bound to take more than six thousand ties under the contract; and the correspondence shows that after the expiration of ninety days from the making of the contract the appellee asked indulgence and complained it could not secure an inspector from the Pennsylvania Railroad. The proof for the complainant shows that six months would be a reasonable time for the completion of the contract.

The chancellor held that ninety days was a reasonable time for the completion of the contract and that the appellee under its contract was not obligated to take any ties not ready for delivery at that date. But that as six thousand ties had been accepted and paid for no question was presented as to the difference between the

ties delivered by February 10th.  Some of the correspondence, that is to say, a letter from the Mobile office, in waiving the stipulation for delivery by the 1st of January, stated that appellee would be willing to extend the time ninety days or for some such period.  However, the contract was modified so as to show delivery as soon as possible, which is held to mean a reasonable time.

We do not think that the contract can be limited to ninety days on this record.  The whole correspondence and dealing between the parties show that the contract was not attempted to be terminated at the end of ninety days.  The appellee insisted that the contract did not obligate it to take more than six thousand ties and the appellant insisted that it had the option of furnishing ten thousand ties.  The market had gone off after the contract was made and there was practically no market for the ties.  Naturally, in this situation the one party did not want to accept any more than was necessary, while the other wanted the advantage of this contract.

It seems to be the rule that in contracts of this kind the party who is first called upon to act with reference to the contract has the option of determining the quantity that he will deliver.  It was so held in *Delapierre Co.* v. *Chickasaw Lumber Co.,* 111 Miss. 607, 71 So. 872, and counsel for the appellee concedes it to be the law that the appellant had the option in this case.  But counsel insists that the appellant in its correspondence with the appellee stated that it had the ties ready for delivery, and that the proof showed, or the chancellor was warranted from the proof in finding, that it only had six thousand ties ready for delivery when it called upon the appellee to inspect and take up the ties.  There is a great deal of evidence on what is a reasonable time and there is a great deal of evidence as to the number of ties actually manufactured at the different dates referred to.

We think the chancellor's finding was predicated upon the idea that the contract expired by limitation on the 10th of February, that is to say, the appellant only had to the 10th of February in which to perform his contract. We think that, taking the correspondence between the parties throughout, neither party understood the appellant's right to have expired at that time, and that the contract was not limited to ninety days, but was limited to a reasonable time, taking all of the circumstances into consideration, and the facts contained in the record show that the appellee was asking the indulgence and forbearance of the appellant after the 10th day of February, and that it could not insist now that the contract limited the appellant's right to that date; that the appellant had a right to perform the contract up till the time it was notified that the appellee would not stand by the contract. The appellee's position was based upon the idea that it had the option to take only six thousand ties. The appellee now concedes it was mistaken in the law in this respect, but insists that the appellant did not have ten thousand ties manufactured when it declined to carry out the contract but was under duty to make other or more ties afterwards.

We think the appellant is entitled to recover the number of ties which it had manufactured and had in place up to the time the appellee notified it that the appellee had finally determined not to take any more ties. We do not understand the chancellor's finding to be predicated upon the idea that the appellant did not have more than six thousand ties manufactured at the time of such final notification.

The judgment will therefore be reversed, and the cause remanded, to be determined in accordance with these views.

*Reversed and remanded.*